WALTER S. DICKEY v. THE COFFEYVILLE VITRIFIED
BRICK AND TILE COMPANY.

No. 13,573.    (76 Pac. 398.)

SYLLABUS BY THE COURT.

1. MINES AND MINING—*Termination of Lease.* A gas and oil lease is not void for uncertainty because its duration extends "so long as gas or oil may be found in paying quantities."

2. ———— *Termination Clause in a Gas and Oil Lease Construed—Exercise of Option.* A stipulation in a gas and oil lease that "if wells are put in operation, and at any time in the future the party of the second part [the lessee] shall become satisfied that it is not paying, he shall surrender this lease, and remove all machinery, pipes and fixtures from the premises, and be released from all further obligations," does not put the lessee in the position of a tenant at will. The lease is not terminable at his option, after the production of gas or oil, upon his assertion that a well is unprofitable, when the contrary is true.

3. ———— *Clause Held to Mean the Unprofitable Well Only.* The clause in the lease set out in paragraph 2 means that if the lessee become satisfied that a particular well is not paying, and such fact exists, the lease is terminated with respect to the unprofitable well only.

4. ———— *Gas and Oil Leases Defined—Vested Rights of Lessee.* Gas and oil leases are in a class by themselves: they are not "leases" in the ordinary sense; they are in the nature of a license, with a grant conveying the grantor's interest in the gas- or oil-well, conditioned that gas or oil be found in paying quantities. When gas or oil is found, the right to produce it becomes a vested right, and the lessee will be protected in exercising it agreeably to the terms of the contract.

Error from Neosho district court; L. STILLWELL, judge. Opinion filed April 9, 1904. Affirmed.

STATEMENT.

IN April, 1902, plaintiff in error bought from one J. W. Cole 138 acres of land, taking a special warranty deed therefor. The conveyance was made subject to the following gas and oil lease, which was on

record at the time the deed was executed and delivered :

"CHANUTE, KAN., December 23, 1901.

"THIS AGREEMENT, made and entered into, between J. W. Cole and wife, parties of the first part, and C. D. Martin, manager of the Kansas and Texas Oil Company, party of the second part :

"1. WITNESSETH, that parties of the first part for and in consideration of the sum of one dollar, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained, on the part of the said party of the second part, to be kept and performed, do grant unto the party of the second part the exclusive right to enter upon to drill, to lay and maintain gas and oil pipe-lines so long as gas or oil may be found in paying quantities upon the following-described premises, situated in Neosho county, Kansas, to wit:"    [Here follows the description of 138 acres of land.]

"2. The party of the second part agrees to begin drilling upon said premises within ten days from the date of this lease.

"3. If gas is found in any well or wells in paying quantities, first party is to have on demand sufficient gas for his tenants' domestic purposes upon the premises free, said second party to have the remainder. If said second party shall market or use gas from any well or wells he shall pay first party therefor at the rate of eighty dollars per year for each and every well during the time that such gas shall be sold or used, and in case said second party does not sell or use gas from said well or wells he is to pay first party one-half as much, or forty ($40) dollars per year, for each well so long as not used ; all payments to be made on the 1st of January, at the First National Bank of Chanute, Kan.

4. "If oil is found in paying quantities upon the described premises, said second party agrees to continue drilling wells as fast as possible, until there are at least eight wells inside of one year from this date. He further agrees that the wells shall be completed

and operated just as soon as possible, and should he fail to have the first well in operation within seven months from this date, he shall pay the first party one hundred ($100) dollars in cash, and for each and every succeeding well, if not in operation within six months from time of drilling, he shall pay to first party one hundred ($100) dollars, and continue to pay this amount for each well every six months until operation is begun and continued. Said second party is to have the exclusive right, without interference, to lay as many gas- and oil-pipes across, over and through any portion of the heretofore described premises (except within 300 feet of the buildings now on the premises) by paying first party all damages that may occur therefrom to said land or crops. Second party further agrees to lay all gas- and oil-pipes not less than eighteen inches under the surface of said described land; no shackle rods to be used. Second party agrees that as soon as oil-wells are in operation he will deliver unto the first party one-eighth of the oil realized therefrom, in tanks at the wells, without cost, or pay the market value monthly therefor, at option of the first party.

5. "In case gas or oil is not found in paying quantities upon said described land, this lease shall be void and be surrendered, and said second party shall remove all his fixtures from the premises. If wells are put in operation, and at any time in the future the party of the second part shall become satisfied that it is not paying, he shall surrender this lease, and remove all machinery, pipes and fixtures from the premises, and be released from all further obligations.

6. "In case the party of the second part shall fail to keep and fulfil any of his part of the agreement and covenants of this lease, he shall thereby forfeit all rights and privileges granted him in the same, and shall at once peaceably and without damage surrender the said premises to said first party.

7. "All conditions of this agreement shall extend to the heirs, executors and assigns of the parties hereto.

''Witness our hands and seals, this 23d day of December, 1901.        (Signed)        J. W. COLE.
                                                S. C. COLE.
                                                C. D. MARTIN,
                *Manager Kansas & Texas Oil Company.*''

The deed was acknowledged before a notary public December 23, 1901.   For convenience of reference we have numbered the different clauses of the lease.

Conforming to the conditions of the lease, Martin, the lessee, commenced drilling on the premises at once, and on or about January 13, 1902, completed a paying gas-well.   The lease was assigned thereafter by Martin to defendant in error.

This was an action begun on May 9, 1902, by Dickey, the owner of the land, against the brick company to set aside and cancel the lease.   He was unsuccessful in the court below, and has come here by this proceeding in error.

*John J. Jones*, and *Karnes, New & Krauthoff*, for plaintiff in error.

*W. E. & J. B. Ziegler*, and *H. P. Farrelly*, for defendant in error.

The opinion of the court was delivered by

SMITH, J.: It is contended that the lease is void for uncertainty, in that its duration extends ''so long as gas or oil may be found in paying quantities.'' This is a common expression found in such leases, and it is generally for the benefit of the lessee. Whether a gas- or oil-well is a source of profit can be determined readily by deducting the cost of production from the market value of the product.   We have not been referred to any adjudicated cases involving the validity of gas or oil contracts like the one at bar

where leases containing such stipulations have been held void for uncertainty; on the other hand, the authorities on the subject sustain the validity of such contracts. (Thorn. Oil & Gas, §§ 134, 135; *Harness v. Eastern Oil Co.*, 49 W. Va. 232, 38 S. E. 662; *The Xenia Real Estate Company et al. v. Macy*, 147 Ind. 568, 47 N. E. 147; *McMillan v. Phila. Company, Appellant*, 28 Atl. 220; *Young v. Oil Co.*, 194 Pa. St. 243, 45 Atl. 121; *Colgan v. Oil Co.*, 194 id. 234, 45 Atl. 119, 75 Am. St. 695.)

Gas and oil leases are in a class by themselves; they are not strictly "leases," as defined and treated in the law of landlord and tenant; they are in the nature of a written license, with a grant conveying the grantor's interest in the gas- or oil-well, conditioned that gas or oil be found in paying quantities.

Plaintiff in error invokes the rule that where a lease is terminable at the option of one party it is equally so at the will of the other. It is sought to apply this rule here from the fact that in clause 5 of the lease it is provided:

"If wells are put in operation, and at any time in the future the party of the second part shall become satisfied that it is not paying, he shall surrender this lease, and remove all machinery, pipes and fixtures from the premises, and be released from all further obligations."

The lease before us does not create what may be likened to an estate at will, and permit the lessee at his option to terminate the lease at any time. The lessee could not arbitrarily declare that a profitable gas- or oil-well was not paying, and thus satisfy the condition of the lease above set out respecting a surrender. (*Balto. & Ohio Rld. Co. v. Brydon, &c.*, 65 Md. 198, 611, 3 Atl. 306, 9 Atl. 126, 57 Am. Rep.

318; *Exhaust Ventilator Co. v. Chicago, Milwaukee & St. Paul Ry. Co.*, 66 Wis. 218, 28 N. W. 343, 57 Am. Rep. 257; *Ela and another v. Bankes*, 37 id. 89; *Andis v. Personett*, 108 Ind. 202, 9 N. E. 101.)

The condition in this contract is different from that before the court in *Campbell v. Holcomb*, 67 Kan. 48, 72 Pac. 552. In that case the agreement was that an employee should receive as salary a stated sum *per annum* and twenty-five dollars a month additional if the value of business done by him should be satisfactory to his employer. It was held that the plaintiff must show satisfaction on the part of the employer before a recovery of the extra compensation could be had. Here it may be said that there are two conditions precedent which must concur to justify the lessee in surrendering the lease — one that the well is not paying, and the other that the lessee shall become satisfied of that fact. In *Campbell v. Holcomb*, supra, if the contract had been that the employee was to receive $100 a month as salary provided the profits on the goods he sold should appear to the satisfaction of his employer to be $200 a month, the amount of profits could have been ascertained readily, and if they should have aggregated the sum mentioned the expressed dissatisfaction of the employer would not have availed to defeat an action for salary. So, if it should be stipulated in a contract for the sale and delivery of bridge timbers that the vendee was not obligated to pay the agreed price unless he should be satisfied that the timbers delivered were twenty feet long or over, the purchaser would certainly be liable for the price if timbers thirty feet in length were furnished to him, although he should protest, however solemnly, that the same were shorter than the length contracted for.

In matters of taste, as where an artist or sculptor

agrees to furnish a picture or bust to the satisfaction of another, the latter is the sole judge whether the work done complies with the contract. (*Zaleski v. Clark*, 44 Conn. 218, 26 Am. Rep. 446; *Gibson v. Cranage*, 39 Mich. 49, 33 Am. Rep. 351.) In such cases there is but one test or condition of payment, which is that the vendee be satisfied. In this case it must be held that if it be demonstrated that a gas- or oil-well is paying, which, as before stated, can be ascertained readily, it is satisfactory, within the meaning of the contract, although the lessee assert to the contrary. (*Hawkins v. Graham*, 149 Mass. 284, 21 N. E. 312, 14 Am. St. Rep. 422.)

Again, it must be remembered that this action had for its purpose the cancelation of the entire lease and its removal as a cloud on the title of the owner of the fee. In our construction of clause 5, above quoted, the provision for the termination of the contract, when the lessee should become satisfied that a certain well was not paying, had application to that particular well only, and, in such event, the lease was not terminated except with respect to the unprofitable well, if there were no breach of the other conditions in the contract. In *Coffinberry v. Oil Co.*, 68 Ohio St. 488, 67 N. E. 1069, a decree was entered canceling an oil lease as to all undrilled land. It would be unreasonable to hold that if one of a dozen wells should prove unprofitable, and the lessee should so declare, such fact would avoid the entire lease.

If, as argued by counsel for plaintiff in error, the lessee could arbitrarily end the lease by asserting that he had become satisfied that a profitable well was losing money, such action would result in a benefit to their client, for in lieu of rent or royalty a valuable gas- or

Dickey v. Brick Co.

oil-well would revert to him in its entirety, freed from any claim of the lessee.

When this action was begun in the court below the time allowed the lessee to begin the drilling of oil-wells had not expired.   With respect to the gas-wells the contract was executed.   A gas-well was completed which produced gas in paying quantities. From this well the lessor was entitled under the contract to a sufficient supply of gas for his tenants' domestic purposes, free of charge, and eighty dollars a year as rent for the same.   When gas or oil is found, it is held that the right to produce it becomes a vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of his contract.   ( *Colgan v. Oil Co.*, supra.)

It is contended that Martin forfeited the lease by abandonment of the gas-well.   This was a question of fact for the court or jury.   (Thorn. Oil & Gas, § 185.)   The court below, after hearing the evidence, decided against the claim of abandonment, and its finding will not be disturbed.

There is no merit in the claim that defendant in error was estopped by its conduct from asserting its ownership of the lease assigned to it by Martin. Plaintiff in error took his deed to the land subject to the lease, which was recorded, and which ran to Martin and his assigns.   There was testimony also that he had ample notice of the assignment by Martin to the brick company beyond the recitals in the recorded lease before he bought the land.

The judgment of the court below will be affirmed.

All the Justices concurring.