WALTER S. DICKEY, *Appellee*, v. THE COFFEYVILLE
VITRIFIED BRICK & TILE COMPANY, *Appellant*.

No. 17,679.

SYLLABUS BY THE COURT.

1. OIL LEASE—*Construction of Contract—Measure of Recovery.*
An oil lease provided that if oil was found on the premises
in paying quantities the lessee should drill eight wells and pay
to the lessor a certain royalty of the oil produced, and that
for each six months' failure to operate any well the lessor was
to be paid $100.   There was a further provision that the lessee
might surrender the lease as to any unproductive well and
should remove the machinery and fixtures therefrom and be
released from further obligations.   *Held,* that after the re-
quired number of wells were drilled the lessee was liable only
for the stipulated royalties so long as the wells were operated
in good faith, and that after operations-ceased and until the
lease was surrendered the lessee was liable for $100 per well
for each six months' failure to operate.

2. ——— *Same.*   The mere failure formally to surrender the
lease after the casing and machinery had been removed from
the wells and all operations had ceased did not entitle the
lessor to further payment of rentals.

Appeal from Neosho district court.   Opinion filed
July 6, 1912.   Modified.

*W. E. Ziegler,* and *Charles Bucher,* both of Coffey-
ville, for the appellant.

*John J. Jones, James A. Allen,* and *James W. Reid,*
all of Chanute, for the appellee.

Dickey v. Brick Co.

The opinion of the court was delivered by

PORTER, J.:   Walter S. Dickey brought this action
to recover rentals under the terms of an oil-and-gas
lease.   The case was tried to the court and the plaintiff
recovered judgment in the sum of $4800 together with
$1200 interest.   The defendant appeals.

, The lease was executed in December, 1901, and by
its terms the appellee was to be paid a royalty of one-
eighth of the oil realized; and there was a provision
that:

"If oil is found in paying quantities upon the de-
scribed premises, said second party agrees to continue
drilling wells as fast as possible until there are at least
eight wells inside of one year from this date.   He fur-
ther agrees that the wells shall be completed and oper-
rated just as soon as possible, and should he fail to
have the first well in operation within seven months
from this date, he shall pay the first party one hundred
($100.00) dollars in cash, and for each and every suc-
ceeding well, if not in operation within six months
from time of drilling, he shall pay the first party one
hundred ($100.00) dollars, and continue to pay this
amount for each well every six months until operation
is begun and continued."

The petition alleged that appellant drilled eight
wells within the first year and that oil was found in
paying quantities, but that appellant failed and
neglected to operate any of the wells and to pay any
royalties therefrom, and judgment was asked for $100
on the first well as of July 25, 1902, and for $100 each
succeeding six months thereafter, and the same amount
for each of the other seven wells from the dates when
drilled.

The answer alleged that oil was not found in paying
quantities in any of the wells, that the total production
of all of them during the entire period amounted to
only about 1200 barrels, which had been sold at the
market price and appellee's one-eighth royalty, which

37—87 KAN.

amounted to only $171.24, had been deposited to his credit with the purchaser. There was an agreed statement of facts covering most of the issues. This was supplemented by proof offered by the appellant, which was not contradicted, showing that the best of the wells never produced to exceed two to four barrels each per day, and further, that appellant had at a financial loss of twenty thousand dollars attempted by every means known to the business to make the wells produce oil in paying quantities. The evidence further showed that appellant continued to occupy the premises from the time the wells were first drilled, endeavoring to produce oil, until January 31, 1905, when operations ceased.

The main contention of the appellant is that the burden rested upon the appellee to prove the averment of the petition that oil was found in paying quantities; that appellee's right to demand $100 per well for every six months' failure to operate them rests entirely upon a wrongful or inexcusable refusal to operate paying wells. In this connection it is insisted that the only evidence offered upon this issue conclusively established the fact that none of the wells was a paying one. The clause reads, "If oil is found in paying quantities upon the described premises, said second party (lessee) agrees to continue drilling wells as fast as possible until there are at least eight wells inside of one year." The statement that oil was found in paying quantities on the premises can not be construed as an averment that any well was a paying one. It means simply that oil was found on the premises sufficient to warrant the appellant in drilling the required number of wells. After they were drilled and operations were begun, the appellant's rights in case any well proved unproductive are provided for in another clause which reads:

"If wells are put in operation and at any time in the future the party of the second part shall become satisfied that it is not paying, he shall surrender this lease

and remove all machinery, pipes and fixtures from the premises, and be released from all further obligations."

The terms of this lease were before the court in *Dickey v. Brick Co.*, 69 Kan. 106, 76 Pac. 398, in which Dickey sought the concellation of the lease, and in which he was defeated. It was ruled as follows:

"If the lessee become satisfied that a particular well is not paying, and such fact exists, the lease is terminated with respect to the unprofitable well only." (Syl. ¶ 3.)

In the opinion it was said in reference to the clause now under consideration:

"Here it may be said that there are two conditions precedent which must concur to justify the lessee in surrendering the lease—one that the well is not paying, and the other that the lessee shall become satisfied of that fact." (p. 111.)

It is the appellant's contention that the provision for the $100 payments every six months on each well is in the nature of a penalty designed solely to prevent the lessee from sealing up paying oil wells and refusing to operate them and thus deprive the lessor of the royalties which would accrue to him by their operation as provided for in the lease, and that the consideration moving to the lessor in all such cases is the receipt of his royalties if oil is found in paying quantities, and not payment of the penalty for failure to operate.

On the other hand, the appellee points to the provision of the contract by which the lessee was to pay these sums in case the wells were not operated, and the further provision for the surrender of the lease if oil should not be found in paying quantities. The latter provision reads:

"In case gas or oil is not found in paying quantities upon said described land, this lease shall be void and be surrendered and said second party shall remove all their fixtures from the premises. If wells are put in operation and at any time in the future the party of

the second part shall become satisfied that it is not paying, he shall surrender this lease and remove all machinery, pipes and fixtures from the premises, and be released from all further obligations."

We have not been aided by the citations to cases from other courts because in none of them were the terms of the lease at all similar to the one before us. The construction given to the lease by the trial court obviously works some hardship to the appellant. On the other hand, to give it the construction which appellant contends for would result in hardship and injustice to the appellee. With the benefits and hardships of the contract the court has nothing to do. It appears that appellee sought the aid of the courts long ago to secure a cancellation of the lease, not, however, on the ground that the lessee had failed to operate (the suit having been brought before the time allowed for drilling wells had expired) but on the ground that, the lease being terminable by the lessee whenever he was satisfied it was not paying, it was equally so at the option of the lessor. He was defeated in that contention. (*Dickey v. Brick Co.*, 69 Kan. 106, 76 Pac. 398.) It is shown by the agreed statement of facts that appellant drilled eight wells within the first year and operated them, with some intermissions, until January 31, 1905, when all attempts to operate the wells ceased. The lease was not formally surrendered until December, 1907. The court made no findings but gave appellee judgment for $4800 and interest on that sum amounting to $1200. In view of the evidence and facts agreed to we think it is apparent that the court arrived at the amount of the judgment by allowing $200 per year for each of the eight wells for three years' failure to operate or to surrender the lease. The agreed statement shows that the appellant removed the casing and material from the wells two years after all operations ceased, that is, in February, 1907.

We construe the terms of the lease to mean that so

Dickey v. Brick Co.

long as the lessee operated the wells in good faith and paid to the lessor the stipulated one-eighth royalties the lessee was not liable for any additional payments; that for every six months' failure to operate each well until the lease was surrendered the lessee was liable to pay $100. The evidence and the agreed facts show conclusively that the appellant in good faith continued to operate the wells until January 31, 1905. The uncontradicted evidence as to the amount expended in efforts to make the wells productive negatives the idea that until that date appellant was not acting in good faith and doing everything in its power to make the wells produce in paying quantities. No demand was ever made by the lessor for the payment of the $100 per well until the suit was brought. It is true that no demand is required by the lease, but the failure to claim or demand payment for the intermittent periods when no work was being done, together with the undisputed evidence as to the large sums expended by the lessee in apparent good faith indicate that until January 31, 1905, when all operations ceased, neither party to the lease considered that any payments were to be made for the few months in which there had been no active operations.

We think the court was not warranted in allowing for the last year, after the casing had been removed. All that remained to be done after that was the mere formal surrender of the lease. It is obvious that when the casing is removed from oil wells no further operation of them is possible or could be in contemplation. To allow judgment in such an amount for the mere failure to cancel and surrender the lease requires a construction of the language of the instrument which in our opinion is not warranted and which could hardly have been intended by the parties.

The judgment is modified and the cause remanded with directions to reduce the amount to $3200 and interest from the time payments were due.