(Nos. 2490, 2508. Jan. 24, 1922.)

TERRY et ux. v. HUMPHREYS et al.

HUMPHREYS et al. v. TERRY et ux.

### SYLLABUS BY THE COURT

(1)   Assignments of error not argued in the brief are deemed abandoned.   Alvarado Mining & Mill Co. v. Warnock, 25 N. M. 694, 187 Pac. 542, followed.                              P. 567

(2)   Where it is sought to cancel an instrument on the

ground that its execution was obtained by false pretenses, statements, and promises, the complaint must allege that the plaintiff relied on such false representations, statements, and promises, and, if not so alleged, evidence thereof at the trial is properly excluded.    P. 567

(3) Any transactions by the plaintiff with the defendant relating to the subject matter of the contract or agreement, inconsistent with an intention to rescind, amount to "ratification" of such contract or agreement.    P. 568

(4) An oil and gas lease for a period of five years, or as long thereafter as oil and gas, or either of them, is produced from said land by the lessee, conveys "real property," and under chapter 84, Laws 1915, requires that the husband and wife join in such instrument.    P. 568

Appeal from District Court, Eddy County; Bratton, Judge.

Suit by J. D. Terry and wife against S. G. Humphreys and the Artesia Oil & Gas Company. From the judgment, plaintiffs appeal, and from part of the judgment defendants file cross-appeal. Reversed and remanded, with directions.

J. B. Atkeson, of Artesia, for plaintiffs.

J. H. Jackson, of Artesia, and W. W. Arnold, of Robinson, Ill., for defendants.

OPINION OF THE COURT

RAYNOLDS, C. J.    This is a suit brought by appellants, J. D. Terry and Elmyra N. Terry, his wife, in the district court of Eddy county, to cancel an oil lease executed by J. D. Terry, the husband of the appellant Elmyra N. Terry, on the grounds that the execution and delivery of said lease were induced by false and fraudulent representations, promises, and statements made to the appellant J. D. Terry by S. G. Humphreys.

Plaintiff below alleged that the representations and promises were not carried out in whole or in part; that the land in question was a homestead, and community property of the appellants, husband and wife; that the appellant Elmyra N. Terry had

not signed nor consented to the execution of the lease. The defendant below, S. G. Humphreys, disclaimed all interest in the lease, having assigned it to his co-defendant, the Artesia Oil & Gas Company, the appellee and cross-appellant herein. The defendant, the Artesia Oil & Gas Company, admitted the execution of the lease and filed a general denial as to the other allegations in the complaint. It also pleaded that plaintiffs were estopped by reason of having received an annual rental for an extension of such lease, which annual rental was to be paid in case the lessee did not begin work within the time specified in the lease. By way of new matter the appellee and cross-appellant, the Artesia Oil & Gas Company, alleged that it had spent large sums of money in an effort to discover oil and carry out the provisions of the lease. The case was tried before the court, which decided in favor of the defendant, the Artesia Oil & Gas Company, finding that two-thirds of the property leased was community property, but that the other one-third was the separate property of the wife, Elmyra N. Terry, and, as to the wife's interest in the property, the lease was void and of no effect.

Appellant J. D. Terry assigns error as follows: (1) That the court erred in finding the husband had a right to execute a valid oil lease on the community property in question without the joinder of the wife; (2) that the court erred in finding that the 40 acres of land in question was not a part of the homestead of the plaintiff; (3) the court erred in refusing to admit and consider the testimony of the plaintiff J. D. Terry as to the false statements and representations made by the defendant S. G. Humphreys in order to induce him to execute and deliver the lease in question; (4) the court erred in not finding that the plaintiff was induced to execute and deliver the lease in question by the statements, promises, and representations made to him by the

defendant S. G .Humphreys, which were never performed and carried out, and that by reason thereof the lease was not binding on the plaintiffs; (5) the court erred in not finding that the lease was to be placed in the First State Bank of Artesia to await the development of oil, and that, by reason of its not being so placed in escrow, it became null and void; (6) the court erred in not finding that the land in question was a homestead, and the lease could not be made without the wife's consent, and that, being so made, it was .not enforceable, and should be canceled.

The defendant the Artesia Oil & Gas Company, in case No. 2508, also appeals from that portion of the court's decision finding that one-third of the land leased was the separate property of Elmyra N. Terry. The two cases were consolidated for the purpose of argument and submission to this court.

[1] As to assignments 2 and 6 regarding the homestead, they are not argued in appellant's brief, and are therefore deemed abandoned. Alvarado Mining & Mill Co. v. Warnock, 25 N. M. 694, at page 695, 187 Pac. 542.

[2] Assignments 3 and 4 are to the effect that the court erred in refusing to find that the plaintiff Terry was induced to execute and deliver the lease in question because of false statements, promises, and representations. As to these two assignments, it is sufficient to say that the complaint does not allege that the plaintiff relied upon such statements, promises, and representations, and the court properly excluded evidence of such promises and representations.

"The bill or complaint should show that the misrepresentations made were material, and that the complainant believed that the misrepresentations made by the defendant were

true, and acted in reliance thereon." 9 C. J. "Cancelation of Instruments," par. 151, subd. 5, p. 1235, and cases cited.

Assignment of error No. 5, in which it is alleged the court erred in finding that the lease was to be placed in escrow, and that the escrow agreement was not carried out, is not well taken. The record shows that the plaintiff is estopped, having under the terms of the lease received an annual rental which by the terms of the lease was to be paid, and was paid, because the work contemplated was not begun within the time specified in the lease. The annual rental received was the consideration under the terms of the contract of the delay in starting the development work contemplated by the lease, and amounted to ratification.

[3] "Any transaction with the defendant relating to the subject-matter of the contract and inconsistent with an intention to rescind" amount to ratification. 9 C. J. "Cancellation of Instruments," par. 78, subd. 2, p. 1199, and cases cited. See, also, 4 R. C. L. "Cancellation of Instruments," § 26, and New American Oil & M. Co. v. Troyer, 166 Ind. 402, 76 N. E. 253, 77 N. E. 739.

[4] The proposition offering the greatest difficulty in this case is contained in the first assignment of error, to wit, that the court erred in finding that the husband had a right to execute a valid oil lease on community property without the wife joining therein. The answer to this question involves a construction of chapter 84, Laws 1915, which is as follows:

"Section 1. That section 16 of chapter 37 of the Laws of the Thirty-Seventh Legislative Assembly of the territory of New Mexico, (par. 2766) be amended so as to read as follows:

" 'Sec. 16. Power of the Husband over Community Property. The husband has the management and control of the personal property of the community, and during the coverture the husband shall have the sole power of disposition

of the personal property of the community, other than testamentary, as he has of his separate estate; but the husband and wife must join in all deeds and mortgages affecting real estate: Provided, that either husband or wife may convey or mortgage separate property without the other joining in such conveyance or mortgage: And provided, further, that any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect.'

"Sec. 2. All acts or parts of acts in conflict herewith are hereby repealed."

In most jurisdictions which have adopted the so-called community system of property, the husband, as the head of the community, has the control and disposition of the community property.

"By virtue of the husband's sole right to control the community property, he may, in most jurisdictions where the community system obtains, alienate, during the coverture, even without the consent or joinder of the wife, any of the property belonging to the community. He must, however, act in good faith toward the wife, and, if he disposes of property with intent to defraud her of her rights, his conveyance or disposal will be voidable on that ground." 21 Cyc. "Husband and Wife," subd. 11, p. 1666, and cases cited.

The control of the husband over the community property in this state has been the subject of frequent legislative enactments, and his right and control of such property have been modified from time to time. It is not necessary for the decision of this case to enter into the history and course of legislation on the subject, and we will confine our attention to the enactment above set out, as it represents the state of the law in this jurisdicion at the present time. It will be noted that, by the terms of chapter 84, Laws 1915—

"any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect."

Prior to this enactment community property could be alienated by the husband alone, except in certain instances set out in the law of 1907, which is section 2766, Code 1915, and which was repealed by chapter

84, Laws 1915, quoted above. By the terms of chapter 84, Laws 1915, no transfer or conveyance of the real property of the community could be made without both husband and wife joining, and the control and right of disposition of the husband alone of the real property of the community was done away with. As we construe the statute by its plain terms at the present time, neither husband nor wife can make a transfer or conveyance of the real property of the community without the other joining in such conveyance or transfer, and if such transfer or conveyance is attempted of such real property of the community by either husband or wife alone, such transfer or conveyance is void, and of no effect. This statute has been construed by this court in the case of Miera v. Miera, 25 N. M. 299, at page 305, 181 Pac. 584, where it was held that a conveyance of community property by a husband alone was void, and passed no title to the grantee. The assignment of error which we are considering turns upon the meaning of the words in the statute, "the real property of the community." If such an oil and gas lease as is here under consideration in this case transfers or attempts to transfer or convey real property, it is void and of no effect. If, however, the right or interest transferred or attempted to be transferred thereunder does not come within the meaning of the words "real property of the community," the conveyance can be upheld, and this assignment is without merit.

The instrument by which the rights of the parties in this suit are to be determined, in so far as it is material to the question under consideration, is as follows:

"'Original' Oil and Gas Lease.

"Agreement made and entered into the 24th day of October 1916, by and between J. D. Terry, of Dayton, New Mexico, hereinafter called lessor (whether one or more), and S. G. Humphreys, hereinafter called lessee, witnesseth that the said lessor, for and in consideration of one dollar,

cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept and performed, has granted, demised, leased and let, and by these presents does grant, demise, lease and let unto the said lessee, for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines, and of building tanks, powers, stations and structures thereon to produce, save and take care of said products, all that certain tract of land, situate in the county of Eddy, state of New Mexico [describing land].

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.

"In consideration of the premises the said lessee covenants and agrees:

"First. To deliver to the credit of lessor free of cost, in pipe line to which it may connect its wells, the equal one-eighth part of all oil produced and saved from the leased premises.

"Second. To pay the lessor one hundred dollars each year in advance, for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the same time by making his own connections with the well at his own risk and expense.

"Third. To pay lessor for gas produced from any oil well and used off the premises at the rate of one hundred dollars per year, for the time during which such gas shall be used, said payments to be made each three months in advance."

The lease also provides that if no well is commenced within a certain time the lease shall terminate, unless the lessee shall pay or tender the lessor, or deposit to the lessor's credit in a certain bank, the sum of 25 cents per acre, which is to operate as a rental to cover the privilege of deferring the completion of the well for 12 months from that date. There are other provisions and stipulations as to drilling, damage to growing crops, right to remove machinery, privilege of assignment, and commencement of work, which are not material to

a consideration of the points involved in this branch of the case.

The rule to be applied in the construction of an instrument of this kind has been stated as follows:

"In determining the scope and legal effect of the instrument giving the rights and privileges to mine or take mineral, oil and gas, it is immaterial by what name it is called, whether a lease, contract, grant or conveyance. The courts will look to the language used in the instrument aside from the terms so used to determine its legal effect." 1 Thornton on Oil and Gas, par. 50, and cases cited.

In deciding the question in this assignment as to whether an instrument of this kind conveys or transfers the real property of the community, we are not concerned with the kindred questions which have arisen and have been determined involving the rights and remedies of parties to such instruments, except in so far as these decisions tend to throw light upon the question as to whether or not such an instrument as is here under consideration does or does not convey or transfer real property. It has been decided that the lessee who has not found oil or gas upon the premises is in no position to bring ejectment, as the lease—

"vests no title to any oil or gas which [the lessee] does not extract and reduce to possession, and hence no title to any corporeal right or interest. It is therefore insufficient to maintain ejectment by a grantee who has never taken possession of the land or prospected for or found any oil or gas under it." Priddy v. Thompson, 204 Fed. 955, 123 C. C. A. 277.

When oil has been extracted and the lease has been performed, either in whole or in part, the question of the division between a life tenant and the remainderman has sometimes been called in question. In such a case the courts treat the various interests in the oil and gas, whether in the ground or by sale converted into a fund, as real estate, and adjust the rights of the parties on the well-known principles governing such cases. In this

instance oil and gas leases are held to be an interest in the land. See Parker v. Riley, 250 U. S. 66, 70, 39 Sup. Ct. 405, 63 L. Ed. 847, and cases cited. There can be no partition among lessees of an oil and gas lease as their interests are held to be personalty. Beardsley v. Kansas Natural Gas Co., 78 Kan. 571, 96 Pac. 859; Watford Oil Co. v. Shipman, 233 Ill. 9, 84 N. E. 53, 122 Am. St. Rep. 144.

The various adjudications as to the interests of the lessees and the difficulties courts have encountered in determining these interests can be found in the cases cited in 1 Thornton on Oil and Gas, pars. 60 and 63. The question as to whether or not an oil and gas lease is real estate or personal property is considered in a note to Duff v. Keaton, 42 L. R. A. (N. S.) 472. An oil and gas lease is considered an incumbrance upon real estate within the statute requiring joinder or consent of the spouse. Kokomo Natural Gas & Oil Co. v. Matlock, 177 Ind. 225, 97 N. E. 787, 39 L. R. A. (N. S.) 675. To detail the various constructions and operations of oil and gas leases, the interests attempted to be conveyed, and the adjudications of what these interests are at the various stages of the development for oil and gas would unduly extend this opinion, and serve no useful purpose. The cases on the subject can be found in 34 Century Digest, Mines and Minerals, § 200; 13 First Decennial Digest, Mines and Minerals, 73; 16 Second Decennial Digest, Mines and Minerals, 72 and 73; 1 Thornton, Oil and Gas, pars. 19, 21 27, 51, 53, and 60; Williamson v. Jones, 39 W. Va. 231, 19 S. E. 436, 25 L. R. A. 222; Venture Oil Co. v. Fretts, 152 Pa. 451, 25 Atl. 733. Where the question of the homestead is involved, the courts uniformly hold that the wife must join in the lease to make it valid, and that such conveyance or transfer is an interference with the homestead to such an extent that the consent of both husband and wife must be obtained. 1

Thornton on Oil and Gas, § 291; Franklin Land Co. v. Wea Gas Co., 43 Kan. 518, 23 Pac. 630; Wea Gas Co. v. Franklin Land Co., 54 Kan. 533, 38 Pac. 790, 45 Am. St. Rep. 297; Bruner v. Hicks, 230 Ill. 536, 82 N. E. 888, 120 Am. St. Rep. 332; Pope v. Ulrey, 233 Ill. 57, 84 N. E. 46. The so-called lease in this case has a provision as follows:

"It is agreed that this lease shall remain in force for a term of five years from this date, and as long thereafter as oil and gas or either of them is produced from said land by the lessee."

Similar instruments to this, containing the phrase, "as long thereafter as oil and gas shall be found," or "shall be found in paying quantities," have been construed in Illinois as granting an interest in the real estate, a "freehold estate," and not a lease for years. The construction given to such leases in Illinois is thus stated:

"It is settled by the decisions of the Supreme Court of Illinois that an oil and gas lease like that of the complainants passes to the lessee, his heirs and assigns, a present vested right—'a freehold interest'—in the premises, that this interest is taxable as real property, and that the clause giving the lessee an option to surrender the lease at any time is valid, does not create a tenancy at will or give the lessor an option to compel a surrender, and does not make the lease void as wanting in mutuality. Burner v. Hicks, 230 Ill. 536, 540 [120 Am. St. Rep. 332, 82 N. E. 888]; Watford Oil & Gas Co. v. Shipman, 233 Ill. 9, 13, 14 [122 Am. St. Rep. 144, 84 N. E. 53]; Poe v. Ulrey, Id. 56, 62, 64 [84 N. E. 46]; Ulrey v. Keith, 237 Ill. 284, 298; People v. Bell, Id. 332, 339 [19 L. R. A. (N. S.) 746]; Daughetee v. Ohio Oil Co., 263 Ill. 518, 524 [105 N. E. 308]." Guffey v. Smith, 237 U. S. 101, 112, 35 Sup. Ct. 526, 529 (59 L. Ed. 856).

On the other hand such a lease has been held to be a lease for years, not conveying an interest in land, and has been variously designated a chattel, real, Duff v. Keaton, 33 Okl. 92, 124 Pac. 291, 42 L. R. A. (N. S.) 472; State v. Welch, 16 Okl. Cr. 485, 184 Pac. 786; an incorporeal hereditament, Funk v. Holderman, 53 Pa. 229; Kelly v. Keys, 213 Pa. 295, 62 Atl. 911, 110 Am. St. Rep. 547; Kansas Natural

Gas Co. v. Commission, 75 Kan. 335, 89 Pac. 750; Huston v. Cox, 103 Kan. 73, 172 Pac. 992, and cases cited; a right to explore or prospect—an inchoate right, Steelsmith v. Gartland, 45 W. Va. 27, 29 S. E. 978, 44 L. R. A. 107; Lowther Oil Co. v. Oil Co., 53 W. Va. 501, 44 S. E. 433, 97 Am. St. Rep. 1027; Campbell v. Smith, 180 Ind. 159, 101 N. E. 89; Frank Oil Co. v. Belleview Oil & Gas Co., 29 Okl. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487. It has also been held that such a lease is sufficiently definite in its terms to be a lease for years, and also not void for indefiniteness. 1 Thornton on Oil and Gas, par. 148.

"It is contended that the lease is void for uncertainty, in that its duration extends 'so long as gas or oil may be found in paying quantities.' This is a common expression found in such leases, and it is generally for the benefit of the lessee. Whether a gas or oil well is a source of profit can be determined readily by deducting the cost of production from the market value of the product. We have not been referred to any adjudicated cases involving the validity of gas or oil contracts like the one at bar, where leases containing such stipulations have been held void for uncertainty; on the other hand, the authorities on the subject sustain the validity of such contracts. [Citing cases.] Gas and oil leases are in a class by themselves. They are not strictly 'leases,' as defined and treated in the law of landlord and tenant; they are in the nature of written license, with a [conditional] grant conveying the grantor's interest in the gas or oil well, conditioned that gas or oil be found in paying quantities. * * *

"The lease before us does not create what may be likened to an estate at will, and permit the lesee at his option to terminate the lease at any time. The lessee could not arbitrarily declare that a profitable gas or oil well was not paying, and thus satisfy the condition of the lease above set out respecting a surrender. [Cases cited.]" Dickey v. Coffeyville Vitrified Brick & Tile Co., 69 Kan. 106, 76 Pac. 398.

See, also, South Penn Oil Co. v. Snodgrass, 71 W. Va. 438, 76 S. E. 961, 43 L. R. A. (N. S.) 848, and note.

· We are of the opinion that the instrument before us for construction in this case which by its terms provides that the lease shall extend for a period of five years, and as long thereafter as oil

and gas, or either of them, is produced by the lessee, conveys an indefinite, indeterminable term, and is therefore more than a mere lease for years. It conveys by its terms more than a chattel interest or a mere license or incorporeal hereditament, and the interest attempted to be conveyed is included within the phrase "real property of the community." Conveyance or transfer of it by the husband or wife alone is made null and void, under the rules of construction which we have laid down for the determination. For the above reasons the court also erred in holding the lease in question valid without the joinder of the wife therein.

The question raised by the cross-appellant, Artesia Gas & Oil Company, in its assignment of error that the court erred in finding one-third of the property in question was the separate property of the wife is rendered immaterial by our decision that joinder by the wife is essential to give validity to an instrument like the one in suit.

The case is therefore reversed, with instructions to the trial court to proceed in accordance with this opinion; and it is so ordered.

PARKER, J., concurs.

DAVIS, J., did not participate.