No. 31,966

NETTIE BURDEN, Individually and as Administratrix of the Estate of Walter Scott Burden, Deceased, *Appellant,* v. THE GYPSY OIL COMPANY, THE DERBY OIL COMPANY, WILLIAM W. BURDEN, ANNA KEESLING and ETHEL BARNGROVER, *Appellees.*

(40 P. 2d 463)

148

Opinion filed January 26, 1935.

*F. Dumont Smith, Don Shaffer* and *Albert S. Teed,* all of Hutchinson, for the appellant.

*Ben Jones,* of Lyons, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This is an appeal from a judgment rendered in an action for partition of real and personal property. While other property was involved, we need notice only one tract, concerning which there is no dispute of fact, for the specific questions raised by the appeal pertain to the extent of interest obtained by a life tenant of real estate and the remaindermen, under an oil and gas lease.

Walter Scott Burden, then a widower, owned a certain 12.58-acre tract of real estate, and on April 7, 1913, he conveyed it to his children, William W. Burden, Anna Keesling and Ethel Barngrover, appellees, reserving to himself a life estate therein. Later he remarried and on September 12, 1929, he and his wife executed an oil and gas lease to the Gypsy Oil Company, which put down two producing wells. The lease was for the sole purpose of mining and operating for oil and gas and laying pipe lines, etc., to produce, save and take care of such product from the leased premises for a term of ten years and as long as oil or gas is produced from the land by the lessee.

On July 18, 1933, the appellees executed a written agreement with the oil company confirming the lease made by their father, stating it should not be construed as a denial of their father's title nor as an acknowledgment he and his wife had any interest. The extent of the reservations and exceptions is not here material.

On October 20, 1933, Walter Scott Burden died intestate and left surviving as his heirs his widow and the three children. The widow was appointed administratrix of his estate, and she brought

this action in her individual and in her representative capacities, claiming that she is entitled to a three-fourths interest in the oil produced from the leased premises, seeking an adjudication of rights as between plaintiffs and defendants and for partition of the property.

We need not notice the answer of the Gypsy Oil Company. The individual defendants' answer need not be noticed further than to state it raised the issue that the interest of the life tenant ceased at his death. Among other things, they prayed judgment requiring the administratrix to account for the principal of all sums paid to Walter Scott Burden by the Gypsy Oil Company on account of royalty.

The trial court made findings of fact concerning all the real estate involved in the action, and therefrom made conclusions of law, which, so far as here material, are:

"1. The oil and gas leases conveyed no title to the oil in the ground.

"2. Up to the date of the death of Walter Scott Burden, or W. S. Burden (being the same person), he was entitled to receive the interest upon the fund realized on account of the production of oil from the real estate in which he held a life estate, but he was not entitled to the principal of that fund and it is no part of his estate.

"3. When Walter Scott, or W. S. Burden (being the same person), died, his interest in the land ended absolutely and forever, and there was nothing for anyone to inherit from him; the fee title in that real estate had been vested in the three children of Walter Scott Burden; namely, William W. Burden, Anna Keesling and Ethel Barngrover.

"4. The administratrix of the estate of Walter Scott Burden is not, as such, entitled to any part of the money realized on account of the sale of oil from the real estate in which Walter Scott Burden had only a life estate; the title to said fund followed the title to the real estate and was vested in the said three children of Walter Scott Burden as real estate."

"10. Defendant Gypsy Oil Company and Derby Oil Company are entitled to have their leases, and they hereby are, adjudged to be valid and existing oil and gas leases upon the real estate described in such leases, and such leases are confirmed and approved by the court."

The plaintiffs appeal, contending that after the execution of the leases and discovery of oil by drilling, the oil in the ground became dissevered absolutely from the land, was personal property, and on the death of the life tenant lessor became the property of his heirs and personal representatives, and that oil produced after his death did not belong to the remaindermen, or, stated another way, that the royalty arising under an oil and gas lease on real estate, in which the lessor has only a life estate is personal property, is not

appurtenant to the leased real estate, and descends to the lessor's heirs upon his death, and does not belong to the remaindermen.

It has been held repeatedly that an oil and gas lease is not a lease in the ordinary sense, conveys no interest in the land, but is merely a license to explore. (*Dickey v. Brick Co.*, 69 Kan. 106, 76 Pac. 398; *Gas Co. v. Neosho County*, 75 Kan. 335, 89 Pac. 750; *Beardsley v. Gas Co.*, 78 Kan. 571, 96 Pac. 859.) Other cases to the same effect could be cited.

It has likewise been held that an oil and gas lease is an incorporeal hereditament and that as such it is personal property. (See *Gas Co. v. Neosho County*, supra; *Oil Co. v. McEvoy*, 75 Kan. 515, 89 Pac. 1048; *Robinson v. Smalley*, 102 Kan. 842, 171 Pac. 1155; *Huston v. Cox*, 103 Kan. 73, 172 Pac. 992.)

Appellants contend that it having been held that the lease is an incorporeal hereditament, it passes as personal property. Counsel for appellants argue that when an oil and gas lease has been granted, and the lessee discovers oil and gas, a disseverance takes place and the oil in place becomes personal property. In support of this claim they rely upon *Dickey v. Brick Co.*, supra, where it was held that when oil and gas are found, the right to produce becomes a vested right. Very well, but what is the nature of this right and in whom is it vested?

A *profit a prendre* is the right to take soil, gravel, minerals and the like from the lands of another and is in its nature an incorporeal right. In *Brinkman v. Empire Gas & Fuel Co.*, 120 Kan. 602, 245 Pac. 107, it was held the nature of the grant of an oil and gas lease was of a *profit a prendre* which the grantee might utilize or refrain from utilizing, subject to the conditions of the grant, and in the recent case of *Hardcastle v. McCluskey*, 139 Kan. 757, 33 P. 2d 127, it was held that it is the grantee who has the *profit a prendre*.

And does leasing, exploration and discovery of oil work a disseverance of oil in place from the real estate, so that it may be said to be personal property?

In *Gas Co. v. Neosho County*, supra, the question involved was the taxation of mineral rights under an oil and gas lease. It was there said:

"Such being the scope and purpose of the law, the lease in question brought into existence no state of facts to which it might apply. The lease grants no estate in the land or in the oil or gas which it may contain. It creates an incorporeal hereditament only—a license to enter and explore for oil and gas, and if they are discovered to produce and sever them. (*Rawlings v.*

*Armel,* 70 Kan. 778, 79 Pac. 683; *Dickey v. Brick Co.,* 69 Kan. 106, 76 Pac. 398.) Until discovered and brought to the surface no severance of title occurs. The minerals not only remain a constituent part of the land, but they belong to the owner of the surface-soil beneath which they lie. The lessee has no 'right or title' to them (see *Zinc Co. v. Freeman,* 68 Kan. 691, 75 Pac. 995), and they are not separately taxable to him." (p. 339.)

In *Hover v. McNeill,* 102 Kan. 492, 175 Pac. 150, an oil and gas lease similar to that here was involved, the question being whether void because of failure to record and return for taxation, and it was held:

"The provisions of an oil and gas lease examined, and *held,* the instrument did not operate to sever and convey, as real estate, subsurface mineral deposits." (Syl.)

In *Robinson v. Smalley,* supra, it was said an oil and gas lease does not operate as a grant and severance of mineral in place.

In *Hardcastle v. McCluskey,* supra, in discussing what was included in a mortgage of real estate, it was said:

"Oil in place is part of the land, and was mortgaged precisely as soil and other physical constituents of the land were mortgaged." (p. 758.)

In connection with the above, our attention is directed to the question of what constitutes royalty, and that it is personal property, and *Bellport v. Harrison,* 123 Kan. 310, 255 Pac. 52, is cited. But under that case royalty refers not to the oil in place, but to the share in the oil and gas produced and paid as compensation for the right to drill and produce, and does not include a perpetual interest in the oil and gas in the ground.

Appellants further contend that under *Davis v. Davis,* 121 Kan. 312, 246 Pac. 982, a life tenant has the right to make a valid oil and gas lease. In the above case it was held:

"Where a tenant in tail, on the erroneous assumption that she held a mere life estate in certain real property, in her individual capacity and also as trustee and guardian for others, executed an oil and gas lease to a lessee who for a consideration assigned and warranted such lease to a third person, and the tenant in tail afterwards cut off the entailment by a conveyance of the property to her husband, following which she and her husband executed another lease to the same original lessee, who then challenged the validity of the lease he had theretofore assigned to the third party for a valuable consideration which the original lessee and assignor still retains, it is held that the assignee has a valid lease of the premises, good against both the plaintiff and the original lessee." (Syl. ¶ 6.)

The case does not support appellant's contention that the holder of a life estate can make an oil and gas lease. When the first lease

was executed, Mrs. Davis, supposing she had only a life estate, sought the aid of a court of equity and had herself appointed as trustee for her unborn children who might become remaindermen, and in the probate court she had herself appointed as guardian for her then living children, and under orders of both courts she executed an oil and gas lease in which she and her husband and her adult son joined. Later, on being advised her estate was one in fee tail, she cut off the entailment by conveyance to her husband and made a new lease. In disposing of the case it was said:

"The fact that precedent to the execution of the lease in 1923 there was a lot of superfluous and ineffective preliminaries—concerning a trusteeship for Willie Kellogg and the unborn, possible issue of Mrs. Davis, and a guardianship for her minor children, and the sanction of the district court and the probate court to the execution of the lease—certainly did not vitiate that lease so far as the grant thereof by Vera Mable Davis individually was concerned. The tenant in tail could make a valid lease of the premises during the existence of her tenure. (*Gannon v. Peterson,* 193 Ill. 372, 55 L. R. A. 701; *Hilles v. Dils,* 53 Ind. App. 576, 581; Tiedeman on Real Property, 3d ed., § 36 *et seq.*) And, indeed, it is hardly possible to build up any rational theory on which it could be held that the lease of 1923 to Stout executed by Vera and husband individually (and by Vera as trustee and guardian) was invalid, but that such a lease executed by her husband and herself in 1925 to the same lessee was valid. Moreover, there is a manifest want of equity in Stout's attitude. He was the lessee of both leases. He sold the lease of 1923 to L. H. Wentz by an instrument in which he warranted himself to be its lawful owner and that he had good right to convey and assign it. Estoppel is a principle of equity which applies when it ought to apply, and certainly Stout is estopped to question the rights of his own grantee, who purchased those rights in reliance on Stout's written instrument of assignment with its representations and recitals, and when Stout, also, still retains the consideration paid therefor." (pp. 320, 321.)

In the Davis case no question seems to have been raised that a life tenant could not make a valid oil and gas lease and thus in effect commit waste against the remaindermen. In the proceedings for the first lease that was contemplated and guarded against. When the fact that Mrs. Davis was not a life tenant was later discovered, of course it was clear the proceedings were nugatory. When the second lease was made the circumstances were such that the doctrine of estoppel should have been and it was applied.

In *Benson v. Nyman,* 136 Kan. 455, 16 P. 2d 963, this court held:

"While a life tenant under a will may not develop an oil and gas property to the deprivation of remaindermen, such rule does not apply where all developments were made under and by virtue of the provisions of a lease made by the landowner in his lifetime with a third party as lessee." (Syl. ¶ 2.)

In an annotation in 43 A. L. R. 811, on rights of life tenant and remaindermen *inter se* as to oil and gas, it is said:

"It is established, practically without dispute, that a life tenant has no right to exploit the gas and oil resources of the property for his own benefit, or to authorize, by lease or otherwise, another to do so, where such exploitation had not been begun or authorized before the commencement of the life estate and no such right has been conferred upon him by the will or other instrument by which the life estate was created, or by agreement or consent of the remaindermen entitled to the eventual estate. As the rule is sometimes expressed, the life tenant has no right to open new wells where none has been opened or authorized before the commencement of the life estate."

And in *Fourth & C. Tr. Co. v. Woolley,* 31 Ohio App. 259, 261, 155 N. E. 742, decided since the above annotation was published, it was said:

"The unbroken line of authorities in several states is to the effect that a tenant for life has no right to operate for oil on the premises in which such estate is held, or to make an oil lease thereon, when operations were not commenced before the life estate accrued." (Citing cases.) (p. 261.)

It may hardly be said that *Davis v. Davis,* supra, where the question was not raised, is authority for holding that in Kansas a life tenant can make an oil and gas lease, the claimed effect of which will be to make royalties which may come due in the future personal property to the extent that after the death of the life tenant his heirs and personal representatives take such royalties, and the remaindermen take nothing.

But whatever may be said as to the validity of an oil and gas lease executed only by the holder of a life estate, in the case before us, and during the lifetime of the life tenant, the remaindermen executed a document approving the lease "to all intents and purposes as though they had on the date of the execution of said lease joined therein as parties of the first part."

Appellants argue the remaindermen could not have made a lease without consent of the life tenant. Let it be conceded. There was nothing to prevent their joining in a lease with him, and that was the effect of the original lease and the approval above referred to. The remaindermen are bound and it would not lie in the mouth of the life tenant or his personal representative to say his lease was bad.

In support of their whole theory, appellants' counsel cite a number of authorities to the effect that a different rule applies to the construction of oil and gas leases than to ordinary leases, and that they are to be construed most strongly against the lessee and in

favor of the lessor. We need not comment thereon, for the controversy here does not warrant the application of the rule.

It is not contended by any party that the lease is not valid, the question is whether the rights of the life tenant to royalty were cut off and determined at his death, and it is our judgment they were.

The remaining question is whether the royalties accruing during the lifetime of the life tenant went absolutely to him, or whether the trial court ruled correctly that the life tenant was entitled to receive, not the principal sum of royalties paid to him, but only interest on that principal sum. This proposition has received the attention of other courts, but has never been decided in Kansas.

In Summers on Oil & Gas, p. 618, § 196, it is said:

"Because of the nature of their respective interests, neither the life tenant nor the remainderman or reversioner have the privilege to take oil and gas, or the power to lease the land for oil and gas purposes. If, however, they join in a lease to a third person, the question is raised as to the manner of the apportionment of the income from the lease. Since the oil and gas form a part of the corpus of the estate, the courts usually hold that the life tenant is entitled only to the interest upon the rents or royalties for the period of his life, and that the remainderman or reversioner is entitled to the principal of such sum."

In *Barnes v. Keys,* 36 Okla. 6, 127 Pac. 261, 45 L. R. A., n. s., 178, it was held:

"Where the owners of a life estate and the owners of the remainder join in an oil and gas mining lease, and the lessee develops the lease and produces oil, the life tenants are entitled either to have the royalties invested and to receive the income therefrom, or to receive such a proportion of the royalty as will amount to the present value of an annuity for the life expectancy of the life tenant equal to the interest on the royalties at 6 per cent." (Syl.)

And to the same effect see cases noted in the annotation in 43 A. L. R. 816, ¶ 5; annotation in 36 L. R. A., n. s., 1108; Thornton on Oil & Gas, 5th ed., ch. 10, p. 721 *et seq.; The Fourth & C. Tr. Co. v. Woolley,* supra; *Blakely v. Marshall,* 174 Pa. St. 425, 34 Atl. 564; *Eakin v. Hawkins,* 52 W. Va. 124, 43 S. E. 211; *Meredith v. Meredith,* 193 Ky. 192, 235 S. W. 757, id. (on rehearing) 204 Ky. 608, 264 S. W. 1109; *Parker v. Riley,* 250 U. S. 66, 63 L. Ed. 847; also, 17 R. C. L. 634 (Life Estates, § 24) ; and 21 C. J. 947 (Estates, § 86). An examination of the above authorities will show the rule to be that where the life tenant and remaindermen join in an oil and gas lease they may agree as to division of rents and royalties, and in

the absence of agreement the life tenant is entitled either to have the royalties invested and to receive income therefrom, or to receive an apportionment of the royalties dependent on the value of his expectancy.

It cannot be said that our former decisions holding that the royalty arising from an oil or gas lease is personal property are contrary to the above rule, for in such cases the controversy decided did not involve the question of ownership of such royalty as between life tenants and remaindermen.

When the lease in question was drawn, the possibility that Walter Scott Burden might not be the owner of the entire fee was contemplated, and provision was made that:

"If said lessor owns a less interest in the above described land than the entire and undivided fee-simple estate therein, then the royalties and rentals herein provided shall be paid the lessor only in the proportion which his interest bears to the whole and undivided fee."

In view of the almost unanimous holdings as to rights existing between life tenants and remaindermen under oil and gas leases coming into existence after the life estate vests, we may well hold that the life tenant intended by the contract to procure for himself only the right to receive income from the principal of any royalties arising under the lease.

We conclude that the judgment of the lower court was correct, and it is affirmed.