269 P.2d 1108

**TREADWELL et ux.  v.  HENDERSON.**

No. 5666.

Supreme Court of New Mexico.

Feb. 9, 1954.

Rehearing Denied April 28, 1954.

Gilbert, White & Gilbert, Santa Fe, for appellant.

Rodey, Dickason, Sloan, Mims & Akin, James C. Ritchie, Albuquerque, for appellees.

McGHEE, Chief Justice.

We are asked to reverse the decree of the lower court in an action for declaratory judgment directing the defendant, appellant here, to convey to the plaintiffs, appellees here, real estate formerly belonging to the community estate of the appellant and her former husband, the appellant not having joined in the execution of a contract for the sale of such real estate.

The facts as found by the trial court are, in substance, as follows:

In April, 1948, while Jack L. Harper and the appellant were married, he contracted to convey to the appellees for $5,500 the real estate which is the subject of this action, it having been stipulated such real estate was community property. The appellant did not join in the execution of the contract, and in it Harper represented himself to be a single man.

The appellees entered into immediate possession of the premises which they occupied as their home. They had neither actual nor constructive notice of the fact Harper was a married man and in good faith they entered into the contract believing him to be single.

Very shortly after the execution of this contract Harper filed suit for divorce and the appellant filed a cross-complaint in that action in which she referred to the "sale of properties" and "deals in real estate" by her husband. Pertinent requested findings of fact and conclusions of law made by her in that action were the following:

"Requested Finding of
Fact No. 6

"That subsequent to the ceremonial marriage in Safford, Arizona, in 1941, the plaintiff acquired certain real property in the County of Bernalillo, State of New Mexico, to-wit: (Description) taking said property in his own name and representing himself therein as a single man; that on the 15th day of April, 1948, as a single man the plaintiff entered into a real estate contract

with LaMar D. Treadwell and Ruth Treadwell, his wife, selling to said Treadwells the 'Westerly 41.03 feet of Lots numbered One Hundred and seventy-nine (179) and One Hundred and eighty (180)' as above described for the sum of $5,500, $1,000 of which was paid in cash, plus $50 paid on the execution of the contract, and the balance of $4,-450 payable at $50 a month on the 15th day of each month at %5 interest. The balance still due under said contract is $4,025.12; that said property was acquired with community funds."

### "Requested Conclusion of
### Law No. 5

"That the plaintiff has received under the Treadwell contract approximately $1,650, which said sum was community property and that the plaintiff holds one-half of the same as Trustee for the defendant, which said sum is $825, and plaintiff should account for and pay over said sum to the defendant."

### "Requested Conclusion of
### Law No. 9

"That the defendant is entitled to alimony and the interest of her husband in the real property located in Bernalillo County, New Mexico, * * * that title to said property should be vested in the defendant; that

both parties will be required to execute papers necessary to clear and transfer title to said property and that the Court retains jurisdiction of this cause for the purpose of altering or amending the award of alimony."

The final decree in the divorce action provided, among other things, the following:

"c. That Marian Volney Harper is entitled to alimony, and the interest of Jack L. Harper in the real property located in Bernalillo County, New Mexico, including his interest in the Treadwell contract * * * is awarded to Marian Volney Harper in lieu of alimony, and title to said property is hereby vested in said Marian Volney Harper; that both parties be required to execute the papers necessary to clear and transfer title to all the property involved in this case."

The appellant took an appeal from the decree of the lower court in the divorce action, contending she should have been awarded half of the money already paid to Harper under the Treadwell contract of sale. This court rejected her contention and affirmed the decree of the lower court. Harper v. Harper, 1950, 54 N.M. 194, 217 P.2d 857.

During the pendency of the divorce action, appellant's mother called upon the appellees in their home and at such time the

question of payments under the real estate contract was discussed. Later the same day the appellant encountered appellees in a restaurant in Albuquerque and promised them substantially as follows: "If I get the property, I will give you a deed," and, "You don't need to worry, I'll make it right with you." It was upon this day the appellees first learned Harper was a married man.

After her initial promise, made in the fall of 1948, and until the latter part of August, 1951, the appellant called at the appellees' home on different occasions and discussed the contract with them, reaffirming her earlier promise. It was not until the last mentioned date that appellees were informed appellant did not intend to execute a deed in their favor upon full performance of the contract, when the appellant called upon Mrs. Treadwell and in the course of their conversation the contract was discussed. At this time the appellant told Mrs. Treadwell she would give the appellees their deed if she got the full price of the property—that is, if the appellees would contact Harper and obtain the money already paid him to give to appellant, or if the appellees would pay her such sum themselves, she would give them clear title.

In reliance upon the promises made by appellant, appellees continued to make monthly payments to an escrow agent under the contract of sale and spent some $635 in improving the premises and the appellee LaMar D. Treadwell labored 283 hours on these improvements. When the appellees were informed appellant would not carry out her assurances to them, they ceased to make monthly payments to the escrow agent, but have stood ready to perform at all times.

The lower court found that at all times material the appellant knew or should have known of the real estate contract and its terms; that she knew or should have known that the appellees were making their monthly payments; that she knew or should have known the appellees were improving the real estate, but that she never advised the escrow agent to refuse to accept the payments being made, or advised appellees to discontinue the payments; that she never advised them they had no right to live on or improve the real estate, or asserted she was entitled to its possession until the counterclaim was filed in the present action.

The lower court then concluded as a matter of law that appellant was bound by the contract of sale, apparently resting this conclusion on the doctrine of equitable estoppel and upon the further ruling the appellees were in privity with Harper with respect to the duties, rights and benefits conferred on the parties to the divorce proceeding. It was decreed the appellant should execute and place in escrow a conveyance adequate to transfer merchantable

title to the property in question to the appellees upon their performance of their duties under the contract.

On this appeal the appellant argues first, that § 65–403, N.M.S.A. 1941 Comp., renders void any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone; that by the force of this statute, a contract for the sale of community realty in which the wife does not join is likewise void, at least to the extent that the wife cannot be divested of her interest in the community real estate by estoppel or other equitable doctrine.

Secondly, it is contended the decree in the divorce action did not purport to make the contract of sale binding on appellant, and that even if it were to be so construed, such decree would be of no effect, as the appellees were not before the court in the divorce action, and there is no relation of privity between them and Harper.

Lastly appellant asserts even if the doctrine of equitable estoppel may be invoked against her, the evidence is insufficient to establish all of the elements of the doctrine as laid down by this court in Chambers v. Bessent, 1913, 17 N.M. 487, 134 P. 237.

We will first consider appellant's argument the elements of equitable estoppel have not been established.

We have carefully examined the record, and beyond any doubt there is sufficient evidence to support the findings made that appellant on different occasions promised appellees she would give them a deed to the property, and otherwise reassured them; that until shortly before this action was commenced she never took a position inconsistent with such promises and assurances, even in a divorce action making division of the community property, and, finally, that she stood by for some two years after having full knowledge of the contract, permitting appellees to remain in possession, when she knew, or should have known, they were steadily improving the premises.

Appellant objects there was no proof of any misrepresentation on her part —that she promised to give appellees a deed to the property, but that she did not say for how much she would give such deed. It is sufficient answer to this that at all times material hereto the appellant was chargeable with notice of the contract, and could easily have learned at the time the initial promise was made by her (if she did not already know) what amount remained unpaid on the contract; if she intended to claim otherwise than under the contract, it was her duty after representing her intention to convey title to appellees to specify her terms. Her silence

upon this point after stating she would give appellees a deed and assuring them, "You don't need to worry. I will make it right with you," amounts to concealment of a material fact.

It is also objected the appellees have not shown they relied on the promises made. Appellant seems principally disturbed here because in referring to their mental attitude after the promises made to them by appellant, the appellees did not characterize it as one of "reliance," and because at one point in the testimony of the appellee, Mrs. Treadwell, she stated they presumed they had a purchase. It is thus argued that appellees, rather than relying upon the misrepresentations of the appellant, relied upon their contract with Harper. It is true that one claiming the benefit of equitable estoppel must have relied upon the conduct and representations of the one sought to be estopped, but the fact of reliance may be established by the use of language which may or may not contain the word "reliance." Our holding in Martinez v. Cook, 1952, 56 N.M. 343, 244 P.2d 134, was never intended to impart to the *word* "reliance" the properties of a magic formula. In this connection the appellee, Mrs. Treadwell, testified as follows:

"Q. Now prior to the time that you consulted your attorneys, did (appellant) ever make any demand, written or oral, requesting that you vacate and leave the property? A. No, she never did. That was why we went ahead with our improvements and put our money into it."

At another point she testified:

"Q. And what, to your best recollection did (appellant) say about the Treadwell Contract? * * * A. * * * when we would come around to the contract, she would always say, yes, it would be settled to our satisfaction by a new deed. That is why we hadn't seen an attorney sooner. We figured that is the way it would be."

This testimony amply shows the appellees did in fact rely upon the promises and assurances made by appellant.

Appellant further contends no detriment will be sustained by appellees if she is allowed to repudiate her former conduct. It is claimed appellees have received almost five years' free occupancy of property having a rental value of $75 per month; that they have expended only some $635 in making improvements; and that the money they have paid on the contract still remains in escrow. This statement ignores the amount of labor expended by the appellee, LaMar Treadwell, in making the improvements, found to be 283 hours, and likewise ignores the fact $1,650 of the purchase price was paid to Harper,

against whom appellees have no realistic recourse, since he is presently residing in Mexico and not subject to service of process in this state. Furthermore, although the brief of appellant speaks of rent-free occupancy of the premises by appellees, in her counterclaim she asserts a right to $2,900 damages up to the time of commencement of this suit and an additional $100 per month for each month thereafter that appellees remain in possession of the premises. However, even if appellant were to abandon her claim to these sums, there would yet remain substantial detriment to appellees if appellant be now allowed to repudiate her promises and assurances to them.

In addition to the foregoing it is contended there was no consideration for appellant's promises and that to require her to convey the real estate under the circumstances of this case would be violative of the Statute of Frauds.

■ Appellant's attempt to insert into the requirements of equitable estoppel that of "consideration" will be rejected. The doctrine of estoppel is not one of contract. 19 Am.Jur., Estoppel, § 44; 3 Pomeroy's Equity Jurisprudence, 5th Ed., § 808b.

■ With regard to the Statute of Frauds, in 3 Pomeroy's Equity Jurisprudence, § 807, the relation between it and estoppel affecting the legal title to land is carefully stated:

"* * * It (equitable estoppel affecting legal title to land) is a purely equitable doctrine settled long before the modern rules of equitable estoppel by conduct. It is confined to estates in land. The general rule is, that if a person interested in an estate knowingly misleads another into dealing with the estate as if he were not interested, he will be postponed to the party misled, and compelled to make his representation specifically good. · It applies to one who denies his own title or encumbrance when inquired of by another who is about to purchase the land or to loan money upon its security; to one who knowingly suffers another to deal with the land as though it were his own; to one who knowingly suffers another to expend money in improvements without giving notice of his own claim, and the like. This equity, being merely an instance of fraud, requires intentional deceit, or at least that gross negligence which is evidence of an intent to deceive.

"* * * The most important 'ground of justice and equity' admitted by courts of equity to uplift and displace the statute of frauds concerning legal titles to land, by fasten-

ing a liability upon the wrongdoer, is fraud. There are many instances in which equity thus compels the owner of land to forego the benefits of his legal title and to admit the equitable claims of another, in direct contravention of the literal requirements of the statute, but they all depend upon the same principle."

The principle adverted to in the above quotation that the Statute of Frauds may not be used to shield one in the perpetration of a fraudulent act, is axiomatic. 2 Williston on Contracts, Rev.Ed., § 533A; 19 Am.Jur., Estoppel, § 87. Extensive reference need not be made to New Mexico cases so holding, but see the following: Provencio v. Price, 1953, 57 N.M. 40, 253 P.2d 582; Ritter-Walker Co. v. Bell, 1942, 46 N.M. 125, 123 P.2d 381; Schauer v. Schauer, 1939, 43 N.M. 209, 89 P.2d 521. And, in this connection, we note the following language from 19 Am.Jur., Estoppel, § 93:

"* * * Although fraud is not an essential element of the original conduct working the estoppel, it may with perfect propriety be said that it would be fraudulent for the party to repudiate his conduct, and to assert a right or claim in contravention thereof. * * *"

See also, Annotation in 50 A.L.R. 668, at page 686, et seq., under the title, "§ 7. Fraud, actual or constructive."

In a final attempt to overturn appellees' claim of equitable estoppel, appellant argues appellees shared equal knowledge with her of the defect in the contract of sale. Of course, appellees did have knowledge of the deficiency of the contract after they learned Harper was not a single man, but it would be to subvert the very heart of the doctrine of equitable estoppel if by promises and other conduct the appellant could effectively dissuade appellees from pursuing their appropriate remedy under their contract under the false belief she assented to the contract and its terms, then be allowed to repudiate her actions after appellees have changed their position to their detriment. Nothing in Emblem v. Emblem, 1953, 57 N.M. 495, 260 P. 2d 693, can bring comfort to appellant because the circumstances in that case and those before us are so dissimilar.

We view the conduct of appellant as a grave and unusual abuse of fundamental equitable principles and entertain no hesitancy in concluding she should not be allowed to triumph over appellees in the assertion of her harsh demands.

The next problem before us is whether the doctrine of equitable estoppel may be invoked against appellant, as it is contended the contract of sale, being unsigned by her, is an absolute nullity insofar as enforcibility is concerned, and that validity cannot be breathed into it by the doctrine

of equitable estoppel or on any other equitable ground.

In support of this argument we are referred to § 65–403, N.M.S.A. 1941 Comp., and several decisions of this court interpreting the effect of such statute, and the earlier statute, Ch. 84, Laws 1915, which for present purposes is the same as § 65–403, supra. The argument is that under Terry v. Humphreys, 1922, 27 N.M. 564, 203 P. 539, and Jenkins v. Huntsinger, 1942, 46 N.M. 168, 125 P.2d 327, we have held conveyances of interests in community real estate attempted to be made by the husband alone were void, so that if a conveyance under such circumstances is void, a contract to convey must also be void when unsigned by the wife, as far as enforcibility of it is concerned, and that such was the holding of this court in Adams v. Blumenshine, 1922, 27 N.M. 643, 204 P. 66, 20 A.L.R. 369.

Section 65–403, supra, provides:

"The husband has the management and control of the personal property of the community, and during coverture the husband shall have the sole power of disposition of the personal property of the community, other than testamentary, as he has of his separate estate; but the husband and wife must join in all deeds and mortgages affecting real estate; Provided, that either husband or wife may convey or mortgage separate property without the other joining in such conveyance or mortgage; and, Provided, further, that any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect, except, that the husband may convey directly to the wife or the wife to the husband without the other joining in the conveyance."

We are in agreement with appellant's position as to the effect of this statute on mortgages and conveyances, and further in the agreement that a contract for the sale of community realty executed by the husband alone is unenforcible, but it does not follow such contract is void. That position is untenable under the clear provisions of the statute itself, which is referable only to deeds and mortgages, and under our holdings in Conley v. Davidson, 1930, 35 N.M. 173, 291 P. 489, and Potter v. Connor, 1934, 38 N.M. 431, 34 P.2d 1086, where we have held a vendee under such contract may recover damages upon it in action against the husband. Damages would not have been recoverable if the contracts were void.

The appellant is simply in a position of being estopped in equity from asserting an otherwise valid defense of unenforcibility of a contract.

We said in Holder v. Hunter, 1924, 29 N.M. 644, 226 P. 163, 164:

"It appears that intervener was a married woman and claimed the attached property as her separate estate. The plaintiff had pleaded estoppel against her. Her counsel argues that estoppel in pais does not operate against a married woman except in cases of tort or fraud, citing some old cases and texts. This doctrine was founded upon the principle that, whereas a married woman at the time of those decisions was unable to contract concerning her property, the same result could not be effectuated by means of the doctrine of estoppel. When, however, she was guilty of active fraud or deceit, for which she was always liable in damages, the doctrine of estoppel was allowed against her as a more direct and complete remedy than an action for damages. But now that married women have been freed from the common-law restrictions upon their power to contract, they are subject to the doctrine of estoppel the same as any other person. See 10 R.C.L. Estoppel, §§ 55 and 65; 2 Pom.Eq.Jur. (4th Ed.) § 814."

Inasmuch as appellant cannot under the principle of equitable estoppel prevail over appellees, it is unnecessary to treat of appellees' contention, recognized by the lower court, that the decree in the divorce action bound appellant to the contract of sale, and we make no ruling concerning it, except to note appellant's conduct throughout the course of that action certainly bolsters appellees' claim of equitable estoppel.

There remains for our consideration only the objection of appellant to the trial court's action in making its conclusion of law that she was entitled to no interest upon payments under the contract of sale for the period from August 21, 1951, the date of the last payment into escrow under the contract, until entry of the final decree of the court below in this cause, December 10, 1952. This court notes such conclusion is not carried forward into the final decree, which simply provides the appellant shall execute and place in escrow a conveyance adequate to transfer merchantable title to the premises in question to appellees upon their full performance of their duties under the real estate contract. As the conclusion is not carried forward into the decree, it has no effect or operation. Dunham v. Stitzberg, 1948, 53 N.M. 81, 201 P.2d 1000.

The decree of the lower court is hereby affirmed, and it is so ordered.

COMPTON and SEYMOUR, JJ., concur.

SADLER, Justice (dissenting).

Now, for the first time in almost four decades elapsing since its enactment has this Court breathed life into a contract to convey community real estate in obvious disregard of L.1915, c. 84, 1941 Comp. § 65–403, declaring that any conveyance or attempt to convey the same, signed by the husband alone, "shall be void and of no effect." This it has done by affirming a decree for specific performance of such a contract which admittedly the wife did not sign. We have repeatedly held any such contract, insofar as sought to be made the basis of specific performance, the relief here awarded, is absolutely *void* and of no effect. Adams v. Blumenshine, 27 N.M. 643, 204 P. 66, 20 A.L.R. 369; Terry v. Humphreys, 27 N.M. 564, 203 P. 539; Jenkins v. Huntsinger, 46 N.M. 168, 125 P.2d 327, and cases cited.

In Adams v. Blumenshine, supra, we said [27 N.M. 643, 204 P. 68]:

"If the premises were community property, then it became necessary for both husband and wife to join in any deed conveying the same under the provisions of chapter 84, Laws 1915, and any transfer or conveyance of the same attempted to be made by the husband alone was void and of no effect. *If a transfer or conveyance of the property by these husbands without their wives joining would be void and of no effect, then a contract to make such a transfer or conveyance would likewise be void and of no effect, at least so far as specific performance of the contract is concerned.*" (Emphasis mine.)

The utter invalidity and complete nullity of any conveyance, or attempt to convey, community real estate by either husband or wife alone is so exhaustively treated in Jenkins v. Huntsinger, supra, that it suffices merely to cite the case to demonstrate that the court here upholds relief by specific performance of a contract to convey which the whole rationale of that decision disaffirms. The effort to find support for the result declared by the present majority in the cases of Conley v. Davidson, 35 N.M. 173, 291 P. 489, and Potter v. Connor, 38 N.M. 431, 34 P.2d 1086, by seeking to distinguish between deeds and mortgages of real estate on the one hand and a contract to convey real estate on the other evaporates into thin air when we realize that a contract may be void in part even though actionable in part. Adams v. Blumenshine, supra. That is the exact situation with which we are confronted here. The contract, or its breach, will support an action in damages against the husband. Conley v. Davidson and Potter v. Connor, supra. To that extent it is not void. So here would the wife's conduct, as found by the court, support an action in damages for deceit

against her. But to the extent the contract attempts or promises to convey community real estate, it is just as void as a conveyance itself would be. The prevailing opinion states:

"We are in agreement with appellant's position as to the effect of this statute on mortgages and conveyances, and further in agreement that a contract for the sale of community realty executed by the husband alone is unenforcible, but it does not follow such contract is void."

Now how does this language square with the language of Adams v. Blumenshine, which says:

"If a transfer or conveyance of the property by these husbands without their wives joining would be void and of no effect, *then a contract to make such a transfer of conveyance would likewise be void and of no effect, at least so far as specific performance of the contract is concerned."* (Emphasis mine.)

Neither Conley v. Davidson, nor Potter. v. Connor, recedes from the position that a contract to convey real estate, signed by the husband alone, may be valid in part and for stated purposes and wholly void in part for other purposes. Indeed, in the Conley case these characteristics of such a contract, as held in Adams v. Blumen-.

shine, are noticed and expressly reaffirmed. As against the claim there made that such a contract was wholly void and would not support an action in damages against the husband for its breach, we said [35 N.M. 173, 291 P. 490]:

"There is no merit in this contention, for the present suit is for damages resulting from a breach of contract *and not for specific performance thereof. This distinction was suggested in the 'Adams Case."* (Emphasis mine.)

The discussion of the question before us would be incomplete if it failed to take notice of our decision in McGrail v. Fields, 53 N.M. 158, 203 P.2d 1000, 1002. After reviewing our holding in Jenkins v. Huntsinger, supra, at great length and in the light of some Texas decisions said to challenge the correctness of our conclusions in that case, yet not considered in reaching the result there announced, we said:

"In that case it was determined that the husband had attempted to convey community real property by his deed alone. Subsequently the parties were divorced, and he became the sole owner of half of it. We held that the deed was absolutely void, and that it did not convey the part of the property allotted to the husband in the division as subsequently acquired property. We reviewed the authorities at great length, and concluded that the deed being ab-

solutely void, the grantor conveyed nothing by his deed and that he was not estopped to deny its validity.

"It is contended that we should over-rule the Jenkins case. * * *

"Our decision in the Jenkins case was handed down after a most careful consideration of every question here advanced. We are entirely satisfied with it, and are not disposed to over-rule it. It has now become a rule of property and if we were doubtful of its soundness we would not be inclined to disturb its doctrine."

Then, after the deliberation reflected by the foregoing language, what did we do? We took up a cross-assignment of error urged by appellee and reversed and remanded the cause to enable the trial court to determine an issue which, if what we had previously held was the law, became wholly immaterial. We introduced this sudden reversal of position in the following language, to-wit:

"The defendant, by counter assignment, asserts that the trial court erred in failing to hold that the plaintiff was estopped from claiming title to this property by his laches."

It is difficult to explain McGrail v. Fields. The opinion on its face strongly suggests one of two things, (1) either the disposition ordered arose from a compromise of views inadvisedly acquiesced in to end wearisome debate; or (2) to the same end, an over-zealous mindfulness of our peculiar function to review the facts, not to find them, caused us in three short closing paragraphs mistakenly to remand the cause for a finding on an issue rendered wholly immaterial by all that had been said in nine previous pages of an extensive discussion and review of Jenkins v. Huntsinger, supra. As a precedent to support the conclusion here announced, the case is quite innocuous and without effect. The majority must feel the same way about it, since they do not even cite it.

The result announced in this case, affirming a decree that orders specific performance of a contract to convey community real estate, signed by the husband alone, unquestionably will be a matter of grave concern to every wife in New Mexico. Of course, a conveyance or attempt to convey community real estate by either spouse alone, whether it be the husband or the wife, is equally void. But as is generally understood and as we have gone so far as to recognize in some of our opinions, the protection afforded by this statute is primarily for benefit of the wife against efforts by the husband to appropriate her just and lawful share of community real estate. The broad powers of management and control given the husband over the community afford an ever present temptation to him to do this very thing. But the legislature, some forty years ago, recognized the dan-

ger and by enacting this statute sought to fasten the door against it by pronouncing a declaration of nullity for any and all attempts to evade it. Doubtless, it was familiar with the doctrine that estoppel may not rest on a nullity. Mosley v. Magnolia Petroleum Co., 45 N.M. 230, 114 P.2d 740.

Now it is proposed to open with the key of estoppel the door to this bulwark of protection so long afforded the wives of this state against efforts by any husband so disposed to rob them of it. It is my candid judgment if the majority opinion remains the law, another decade will see the questioned statute so whittled away by cases relying on estoppel as to rob it of any effectiveness for all practical purposes. Witness what has happened to the delinquent tax law since this Court in Scudder v. Hart, 45 N.M. 76, 110 P.2d 536, and Kershner v. Sganzini, 45 N.M. 195, 113 P.2d 576, 134 A.L.R. 1290, extended by interpretation the fraud declared sufficient to defeat a tax title to embrace "constructive fraud." The flood of cases following demonstrates what can happen to a statute once the key of estoppel is turned in the door locked for its protection.

What we said in Alford v. Rowell, 44 N.M. 392, 103 P.2d 119, 123, seems peculiarly pertinent to the majority effort to differentiate between an "attempt to convey" pronounced void by the statute and an "agreement to convey," as being outside the same

interdiction. While discussing the holding in an earlier decision that an oral conditional sales contract was no longer valid in New Mexico, we said:

"If an oral conditional sales contract is no longer valid, it is difficult to comprehend how an oral agreement to enter into a conditional sales contract could be deemed valid."

It is just as difficult for me to understand how, if an "attempt to convey" community real estate is void, a promise to do the same thing is not also void. Our decisions affirm that the portion of any agreement so promising is void and may not be specifically enforced, the most pertinent of which is Adams v. Blumenshine, supra. In my opinion, this statute, enacted primarily to protect the wife against the husband's perfidy, should bind the courts even more rigidly than it does the parties. We should so hold. Instead, the prevailing opinion affirms a decree directing the wife to do what the statute proscribes as a meaningless and void act.

The majority seem to think some significance, fortifying the result announced, flows from their characterization of the proceeding before us as one for declaratory judgment. What difference it could make is quite beyond me. In attempting to define the nature of this action as one for a declaratory judgment, the majority find themselves again plagued by the same state of

confusion as when they sought to draw a distinction, for purposes of decision, between an "attempt to convey" and a "promise to convey." Compare Alford v. Rowell, supra.

Where and what, pray tell me, is the distinction, as respects right to the relief, between a declaration that one is entitled to specific performance and a decree awarding one specific performance? Here we have it in double portion. The decree declares plaintiff "entitled to specific performance." It "awards specific performance" of this very contract. Note its language:

"It is ordered, adjudged and decreed as follows:

"1. That the defendant Marian Volney Henderson be, and she hereby is, ordered to execute and place in escrow with the defendant Rocky Mountain Finance Corporation a conveyance adequate to transfer merchantable title to the following described property (Description omitted) to the plaintiffs upon their full performance of their duties under the real estate contract attached to the Complaint herein as Exhibit 'A'; * * *."

The majority lean on a slender reed, indeed, for support when they find any in this attempted distinction.

In my opinion, the decree ordering specific performance of the contract to convey community real estate, signed by the husband alone, is inherently and fundamentally erroneous and should be reversed. The majority holding otherwise and affirming, I dissent.

LUJAN, J., concurs.

On Motion for Rehearing

McGHEE, Chief Justice.

Motion for rehearing relies heavily upon certain earlier decisions by this Court deemed controlling by the movant and previously overlooked.

■ ▓▓▓▓ The motion will be denied but will be taken as an opportunity to clarify certain language contained in the recent case of Keirsey v. Hirsch, 1953, 58 N.M. 18, 265 P.2d 346, 353; that language is:

"It is settled in New Mexico that real estate owned by a decedent descends upon his death to his heirs and not to his administrators; it is further settled that the purchaser under a real estate contract has acquired a property interest in land of such a character that it descends to his heirs and not to his administrators. * * *"

From the foregoing language it is argued that a real estate contract is a transfer or conveyance of an interest in land within § 65-403, 1941 Comp. The reference to an

"interest in land" made in the Keirsey case was intended to and does refer to the doctrine of equitable conversion as more fully explained by Justice Brice in Mesich v. Board of County Commissioners of McKinley County, 1942, 46 N.M. 412, 129 P.2d 974. The doctrine is treated in detail by Harlan F. Stone, subsequently Chief Justice of the United States Supreme Court, in 13 Col.L.Rev. 369. Historically, this type of equitable interest was a right in personam enforced by the Chancellor and based upon the maxim, "Equity regards as done what ought to be done." A transfer or conveyance, if it be called that, implemented by this established equitable doctrine, is entirely different from the transfer or conveyance by the parties contemplated by the statutes here in question.

Nor do we consider the case of El Paso Cattle Loan Co. of El Paso, Tex. v. Stephens & Gardner, 1924, 30 N.M. 154, 228 P. 1076, of consequence here. The decision in the instant case does not comprehend the specific performance of a real estate contract covering community property executed by the husband alone; the decision applies the equitable doctrine of estoppel for the purpose of holding the wife responsible for her individual commitments upon which other persons have relied and changed their position.

Motion for rehearing is denied.

COMPTON and SEYMOUR, JJ., concur.

SADLER and LUJAN, JJ., dissenting.

SADLER, Justice (dissenting).

When, but a short time before the majority opinion herein was handed down, the question before us in this case was viewed in its proper perspective, uninfluenced by the distraction yet persuasiveness of a strong equity, as in the case at bar, this court with complete unanimity recognized and characterized a real estate purchase contract as passing to the vendee named in it "a property interest in land of such a character that it descends to his heirs and not to his administrators." Keirsey v. Hirsch, 58 N.M. 18, 265 P.2d 346, 353.

It is not surprising, therefore, that the language then so correctly and truly spoken by the court and concurred in by each member of the present majority should so soon serve as a living preachment in support of the views which we advanced in our dissent filed herein. The effort to erase its effect by invoking what is said in Mesich v. Board of County Commissioners, 46 N.M. 412, 129 P.2d 974, instead of aiding the majority position, backfires and actually strengthens ours. Note this language quoted with approval from Pomeroy's Equity Jurisprudence, § 368, to-wit:

"Although the land should remain in the possession and in the legal ownership of the vendor, yet equity in administering his own property and assets looks not upon the land as land,— *for that has gone to the vendee,*—but looks upon the money which has taken the place of the land; that is, so far as the land is a representative of the vendor's property, so far as it is an element in his total assets, equity treats it as money, as though the exchange had actually been made, and the vendor had received the money and transferred the land." (Emphasis ours.)

How the majority can find comfort for their position in any influence of the doctrine of equitable conversion on the relationship of the parties under a real estate purchase contract is beyond me. To the extent it affects the rights or status of the parties at all, it only emphasizes the status of the vendee as acquiring an interest and estate in land and the vendor as thereafter, thanks to the operation of equitable conversion, as seeing his interest magically transformed into personal estate. As pointed out by the late Harlan F. Stone, former Chief Justice of the United States, in 13 Col.L. Rev. 369, cited by the majority, "the vendee's widow has dower in the property in jurisdictions where there is dower in an equitable right to land." In New Mexico an equitable estate in land will support

a decree to quiet title. Albarado v. Chavez, 36 N.M. 186, 10 P.2d 1102. The late Chief Justice Stone, in the article referred to above attributes the origin of this doctrine to Lord Eldon in Seaton v. Slade, 7 Ves.Ju. 265 (273) and quotes from his opinion in that case an exposition of the doctrine as follows:

"The effect of a contract for purchase is very different at Law and in Equity. At Law the estate remains the estate of the vendor; and the money that of the vendee. It is not so here. *The estate from the sealing of the contract is the real property of the vendee.* It descends to his heirs. It is devisible by his will; and the question, whose it is, is not to be discussed merely between the vendor and vendee; but may be to be discussed between the representatives of the vendee." (Emphasis ours.)

Still another New Mexico decision, not noticed in our former consideration of this appeal, El Paso Cattle Loan Co. of El Paso, Tex. v. Stephens & Gardner, 30 N.M. 154, 228 P. 1076, 1077, supports the position we affirm on this question. The late Justice Parker in that case, speaking for the court, said:

"*If the husband alone cannot mortgage community real estate, then he certainly cannot make a valid contract*

*to do so, which would be a sufficient basis upon which to declare an equitable mortgage.* The whole doctrine of equitable mortgage rests upon the equitable maxim that equity regards that as done which ought to be done." (Emphasis ours.)

When our legislature in 1915 enacted in the wife's protection, 1941 Comp. § 65–403, declaring that "any transfer or conveyance attempted to be made of the real property of the community by either husband or wife alone shall be void and of no effect," it did not confine the prohibition to an attempted conveyance of a legal title alone; nor did it make any distinction between the legal and the equitable estate, either of which might become the subject of a transfer or conveyance. It prohibited all attempted transfers of an interest in "community real property". The effect of today's decision is to read out of this statute its substance and leave it but an empty form. A progressively increasing volume of cases based on equitable estoppel will render it, instead of the conveyances it proscribes, "void and of no effect" to all practical intents and purposes.

It follows that the motion for rehearing should be granted. Because the majority rule otherwise, I dissent.

LUJAN, J., concurs.