335 P.2d 1071

Ramon **VIRAMONTES**, Plaintiff-Appellee,

v.

Glen E. **FOX**, Defendant, Counter-Claimant, Cross-Claimant and Appellant,

A. H. **Cox**, Defendant, Cross-Defendant and Appellee.

No. 6449.

Supreme Court of New Mexico.

Feb. 24, 1959.

J. D. Weir, J. R. Crouch, Las Cruces, for appellant.

Garland & Martin, Las Cruces, for appellees.

McGHEE, Justice.

The defendant (appellant) appeals from a jury verdict and judgment awarding the plaintiff (appellee) $5,900 earnest money as liquidated damages pursuant to a forfeiture provision contained in a contract for the

purchase and sale of a farm owned by the plaintiff.

The terms of the agreement are embodied in a binder or preliminary contract employed by A. T. Cox, the real estate broker who brought the parties together, and reads as follows:

"Date Jan. 15, 1957

"Received of Glen Fox $5,900.00 being a deposit on the purchase of the following property:

"640 acres, 13 miles east of Deming on Hwy. 80 being the north 640 acres owned by Raymond Viramontes, County of Luna, State of New Mexico, including 4 pumps and 4 motors now installed, together with all improvements.

"The full purchase price is $107,000.-00, and the balance, to be paid when usual and customary papers are completed, as follows: Buyer to assume indebtedness of $30,600.00 now on farm and assign First Mtg. paper on Villa Motel of $70,500.00 to Seller, with interest on deferred payments at ——% per annum, payable ———, warranty deed and abstract, or policy of title insurance to be furnished by Seller as soon as possible, showing property clear of all liens and encumbrances except $30,600 now on Lien of Middle Rio Grande Conservancy District, easements, restrictions and U. S. Patent Reservations of record, if any, to be assumed by the Purchaser.

"Taxes to be paid by Seller up to and including 1956.

"Paving ——— Rents, interest, insurance, water, sewer, tax and garbage service to be prorated to ———.

"Time limit for possession is Feb. 1, 1957.

"In event this offer to purchase is not accepted by Seller with 5 days, deposit to be returned to Purchaser.

"In event Seller accepts this offer and purchaser refuses or fails to consummate the purchase, Seller shall have option of retaining deposit as liquidated damages and terminating the contract or of enforcing same.

"The Purchaser agrees to purchase said property at above price and terms.

"/s/ A. T. Cox
"Broker

"Accepted: /s/ Glen E. Fox
"Purchaser

"I/we hereby accept above offer to purchase and agree to pay broker a commission of $1500.00 on the full purchase price.

"/s/ Ramon Viramontes
"Seller

"/s/ Ester Viramontes

"His Wife

"by Ramon Viramontes"

Appellee signed this instrument on January 17, 1957, two days after the offer to purchase was communicated to him by A. T. Cox. Shortly thereafter the appellant pursuant to the agreement and with the consent of the appellee went into possession of the farm and he and his son-in-law began farming operations, planting cotton and discing the land. He arranged to have the 1957 cotton allotment placed in his name and made inquiries about having the land rendered for taxes in his name.

On the morning of February 14, 1957, appellant and his wife, appellee and his wife, appellee's brother, Arturo Viramontes, and his wife, and appellant's counsel, and A. T. Cox met in the office of appellee's counsel for the purpose of consummating the agreement by the transfer of the necessary papers and deeds.

At that time appellee's counsel pointed out the existence of a paving lien against the Villa Motel on which the appellant held a prior recorded mortgage and a note which he was giving as part consideration for the purchase of appellee's farm, and requested appellant to execute an indemnification agreement in favor of appellee against the paving lien which was in the amount of less than $1,200 and currently paid up.

The reasons for this request were because appellee had verbally conditioned his agreement to sell on obtaining a loan from the Farmer's and Merchant's Bank in Las Cruces on the Villa Motel mortgage and note, the proceeds of which were to be used for the purchase of his brother's interest in the farm, and because, pursuant to the agreement, appellee was supposed to get first mortgage paper on the Villa Motel.

Unable to reach agreement that morning, the parties agreed to continue negotiations that afternoon at 2:00 p. m. However, appellant and his counsel did not appear. Late that afternoon, just before leaving for home, appellee, his wife, his brother and brother's wife, signed the warranty deed conveying title to the land to appellant, and executed a change of the water rights thereon, and a bill of sale to the personal property indicating they were ready, willing and able to perform the terms of the agreement even though the paving lien was not indemnified.

The following Monday, February 18, 1957, the parties met again in the same office, at which time the appellant raised certain alleged misrepresentations as to the cotton production on the farm, the 1957 cotton allotment and the condition and production of the four irrigation wells thereon. There was no discussion of the paving lien because of the objections raised by appellant who now refused to consummate the

transaction because of them and an alleged breach by appellee in insisting on the indemnity agreement.

As a result the agreement was not performed, the appellant moved off the farm giving possession to appellee, who accepted and then brought this suit for $5,900 deposit money and was awarded such amount by the jury.

Appellant first contends the trial court should have ruled as a matter of law the agreement was governed by the statute of frauds and was therefore unenforcible because it did not identify all vendors, was not executed by all owners having an interest in the land or to be charged on the contract nor by any lawfully authorized agent.

There is no merit in this contention. The English statute of frauds, 29 Charles II, C. 3, is in force in New Mexico as a part of the common law, and provides:

"No action shall be brought on any contract or sale of tenements or hereditaments, or any interest in or concerning them, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or by some person therewith by him lawfully authorized."

Childers v. Talbott, 1888, 4 N.M. (Gild.) 336, 16 P. 275; Coseboom v. Marshall's Trust, 1958, 64 N.M. 170, 326 P.2d 368; § 21-3-3, N.M.S.A., 1953.

The purpose of this statute is to help the court determine whether the contract was made as alleged and whether there is any substantial danger that it is being established by perjury and fraud. The question of signature is wholly subsidiary to that issue. 2 Corbin on Contracts 770, § 522 (1950). By the great weight of authority the "party to be charged" is the party against whom it is sought to enforce the contract, here, the appellant, who has signed, as have the broker and the vendor, appellee. 2 Corbin on Contracts 774, § 524.

Although appellee's brother and his wife also owned an interest in the farm, and the two brothers jointly owned the water rights thereon, there is ample evidence they were not parties to this agreement, appellee having contracted with the express intention of buying out his brother's interest with the proceeds of a loan on the Villa Motel mortgage and note. Thus we believe the agreement adequately identifies all parties thereto. 2 Corbin on Contracts 690, § 500.

The failure of appellee's wife to sign does not render the agreement void or unenforcible, as contended by appellant. She was named in the agreement and was ready, willing and able to convey her com-

munity interest and that is sufficient. Section 57-4-3, N.M.S.A., 1953, requiring the wife to sign deeds and mortgages affecting community property has no application to an action for damages on the husband's executory contract for the sale of community realty and we think it immaterial whether the action is by the vendor or the vendee. Conley v. Davidson, 1930, 35 N.M. 173, 291 P. 489; Potter v. Connor, 1935, 38 N.M. 431, 34 P.2d 1086; Treadwell v. Henderson, 1954, 58 N.M. 230, 269 P.2d 1108. Nor is it any objection that at the time of making the contract the vendor did not have clear title as long as he was able, as here, to convey title to the purchaser when the time for performance arrived. Clark v. Ingle, 1954, 58 N.M. 136, 266 P.2d 672; Crim v. Umbsen, 1909, 155 Cal. 697, 103 P. 178; 6 Corbin on Contracts 24, § 1259. In addition the appellant went into the actual possession of the land, although he thereafter abandoned it.

Next, it is asserted the appellee first breached or repudiated the agreement by insisting on the indemnity agreement as to the paving lien on the Villa Motel property.

Appellant urges such lien was in the nature of a general tax lien taking precedence over prior recorded mortgage liens and that therefore appellee is presumed to have contracted with knowledge of its existence and thus agreed to accept first mortgage paper subject to the outstanding paving lien. Section 14-37-21, N.M.S.A., 1953; Waltom v. City of Portales, 1938, 42 N.M. 433, 81 P.2d 58; City of Albuquerque v. City Electric Co., 1927, 32 N.M. 401, 258 P. 574. Consequently, he asserts, the appellee, by refusing that morning to accept transfer of the mortgage and note unless appellant executed such an indemnity agreement, breached or repudiated the agreement.

We have no quarrel with the proposition of law asserted; however, appellee urges that the words "first mortgage paper" meant a first mortgage taking precedence over anything else including the paving lien and that because the appellant knew appellee conditioned his performance upon obtaining the loan from the bank on such paper, the appellant was obligated to guarantee payment of the paving lien or to have told appellee of its existence during negotiations.

Thus the disagreement was nothing more nor less than an attempt on the part of each party to insist on performance according to his own interpretation of the contract terms, and the discussion that morning pertained to which party should assume payment in case of default on the paving lien.

Looking at the evidence most favorable to the verdict, as we must do, there is substantial evidence that the refusal of the appellee to perform the morning of Febru-

ary 14, 1957, was not absolute but was merely an honest effort to get an agreement on what effect the outstanding paving lien had with reference to the use of the words "first mortgage paper," and, as we have often held, if there is substantial evidence to support the verdict it will not be overturned. Johnson v. Carey, 1958, 64 N.M. 226, 327 P.2d 303.

Under the facts presented we would therefore be unwarranted in holding there was a breach or repudiation by appellee justifying nonperformance by appellant. Generally speaking, time is not of the essence in land contracts unless expressly made so and a reasonable delay in tendering performance will not defeat the enforcement of the contract. 55 Am.Jur., Vendor and Purchaser, 933, § 540. A repudiation which may be treated as a breach justifying nonperformance by the other party must be a distinct, unequivocal, and absolute refusal to perform according to the terms of the agreement. Armstrong v. Ross, 1906, 61 W.Va. 38, 55 S.E. 895; Bannister v. Victoria Coal & Coke Co., 1908, 63 W.Va. 502, 61 S.E. 338.

As we interpret the authorities, appellant's remedy was to tender performance according to his own interpretation of the agreement, or according to appellee's interpretation reserving his rights as to the proper interpretation of the contract and then the parties could seek relief in the courts for a construction of its terms. Not only did appellant fail to tender any performance, although he testified that he was ready, willing and able to do so, his own failure to appear that afternoon prevented any immediate agreement on this question. Consequently, to hold as appellant would have us do, would be a virtual denial of the right to insist upon an honest, whether correct or erroneous, interpretation of the agreement. Armstrong v. Ross, supra; Bannister v. Victoria Coal & Coke Co., supra. The courts have not gone so far.

Appellant next urges that he was entitled to have cancellation and recission of the agreement, if enforcible, because of certain alleged misrepresentations inducing him to execute the agreement and put up the $5,900 deposit.

Our general rule that a misrepresentation of a material fact if justifiably relied upon is ground for recission of a contract or an action for damages thereon, even if made in good faith, has no application here. Bennett v. Finley, 1950, 54 N.M. 139, 215 P.2d 1013; Jones v. Friedman, 1953, 57 N.M. 361, 258 P.2d 1131; Ham v. Hart, 1954, 58 N.M. 550, 273 P.2d 748.

There is substantial evidence that appellant either did not rely upon the representations made but made his own independent investigation of the premises, or that such representations were not ma-

 

terial. See, Berrendo Irrigated Farms Co. v. Jacobs, 1917, 23 N.M. 290, 168 P. 483; Bell v. Lammon, 1947, 51 N.M. 113, 179 P.2d 757. It was for the jury to determine the weight and credibility of the testimony presented to them, and unless there is a lack of evidence or it is clearly the other way, the verdict will not be overturned.

We have carefully examined the record in this case and find there is substantial evidence to support the verdict.

Finally, the appellant says he was prejudiced by the failure of the trial court to give certain requested instructions, as well as by certain instructions given by the court.

We have given careful consideration to his claims of error in this regard, and find they are not well taken. When the instructions given are considered as a whole they fairly presented the fact issues in the case and the law applicable thereto. This is all that is required. Crocker v. Johnston, 1939, 43 N.M. 469, 95 P.2d 214; Snodgrass v. Turner Tourist Hotels, 1941, 45 N.M. 50, 109 P.2d 775; Olguin v. Thygesen, 1943, 47 N.M. 377, 143 P.2d 585; Lujan v. McCuistion, 1951, 55 N.M. 275, 232 P.2d 478.

Other arguments and claimed errors on the part of the trial court have been urged. We have examined them and find no merit in such contentions.

It is clear that the appellant breached the agreement by refusing to perform at the second meeting of the parties without justifiable excuse therefor.

The judgment will be affirmed, and

It is so ordered.

LUJAN, C. J., and COMPTON and CARMODY, JJ., concur.

SADLER, J., not participating.