909 P.2d 726

· 121 N.M. 166

**William Z. HOGGARD d/b/a Phoenix Amusements, Plaintiff–Appellee,**

v.

**The CITY OF CARLSBAD through its Mayor, Robert FORREST, et al., Defendants–Appellants.**

No. 15952.

Court of Appeals of New Mexico.

Oct. 20, 1995.

Certiorari Denied Jan. 10, 1996.

James W. Klipstine, Jr., Payne ,& Klipstine, P.A., Lovington, for Plaintiff–Appellee.

B.G. Davis, Rosenberg & Davis, Carlsbad and Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, for Defendants–Appellants.

## OPINION

BOSSON, Judge.

1. The City of Carlsbad appeals from an adverse jury verdict for breach of contract in the sum of $456,000. Plaintiff sued the City for allegedly repudiating its contractual obligations to Plaintiff and thereby committing an anticipatory breach of that contract. The primary question on appeal is whether the evidence introduced by Plaintiff to establish repudiation was sufficient to create an issue of fact for the jury. We hold as a matter of law that a directed verdict should have been entered for the City on this issue. Therefore, we reverse on that claim and remand for a retrial and further consideration of other issues raised by both parties.

## FACTS

2. Plaintiff, an experienced carnival operator doing business under the name Phoenix Amusements, submitted a bid to the City to lease and operate a public amusement park along with certain concession rights. Plaintiff was the successful bidder, and on March 13, 1991, he entered into a formal Lease with the City for a fixed term of three years, requiring Plaintiff to pay annual rent in increasing amounts of $1000, $5000, and $10,-000. The Lease provided that at the end of

the three-year term (March 1994), "[Plaintiff] shall have the first right to continue leasing, subject to renegotiation and any changes in State or Federal laws governing the Lessor." Plaintiff made his initial rent payment in 1991, but on July 27, 1992, Plaintiff requested the City to renegotiate the Lease. At the time, Plaintiff disclosed a deficit of nearly $20,000 and requested a reduction in the second annual payment. Instead of a reduction, the City agreed to a two-month extension for the second rental payment, from September 1, 1992 until October 31, 1992.

3. On October 27, 1992, the City entered into a contract entitled "Agreement to Withhold Real Property for a Term of Years" (the "Pecos Agreement") with a local non-profit corporation, the Pecos River Arts and Science Council, Inc. (the "Pecos River Council"), for the purpose of attempting to develop a cultural center. The land for the proposed center overlapped approximately 30–40% of the area under lease to Plaintiff. The Pecos Agreement provided the Pecos River Council with three years, until October 1995, to raise $500,000 toward the cultural center. During that time, the City promised to "hold" the land and not to "dispose of nor alienate" it. The City agreed to negotiate "a suitable conveyance" of the land to the Pecos River Council if sufficient funds were raised. If not, the Pecos Agreement would be void and have no further effect.

4. Plaintiff interpreted the Pecos Agreement as a repudiation of his rights under the Lease. The day after the City entered into the Pecos Agreement, Plaintiff notified the City by letter that it had "knowingly and willfully violated and breached the terms and conditions of the lease agreement," and that he intended to sue. Plaintiff did not ask the City to clarify the effect of the Pecos Agreement on Plaintiff's rights under the Lease. Plaintiff failed to make the rental payment due October 31, 1992. A month later, the City gave Plaintiff written notice that he was in default and that he had thirty days to cure. When Plaintiff did not cure, the Lease was terminated, and Plaintiff left the park in February 1993.

5. Plaintiff then filed this complaint alleging that the City had committed an anticipatory breach of the Lease by entering into the Pecos Agreement. Plaintiff also alleged a loss of certain concession rights under the Lease and a failure by the City to bring certain park equipment into satisfactory condition according to the terms of the Lease. The City counterclaimed for unpaid rent, utility payments, and insurance premiums. After Plaintiff rested his case, the City moved for a directed verdict based on a lack of evidence that the City had repudiated its obligations under the Lease. The trial court denied the motion, ruling that the rights and obligations of the parties under both the Lease and the Pecos Agreement were ambiguous and that it was for the jury to decide whether the Lease had been breached. The jury returned a general verdict in favor of Plaintiff for $456,000 and against the City on its counterclaim. The City appeals from the verdict.

## DISCUSSION

### Repudiation of the Lease

6. Plaintiff claims the City repudiated its obligations under the Lease when it entered into the Pecos Agreement. To carry his burden under New Mexico law, Plaintiff must meet the following standard: "A repudiation which may be treated as a breach justifying nonperformance by the other party must be a distinct, unequivocal, and absolute refusal to perform according to the terms of the agreement." *Viramontes v. Fox*, 65 N.M. 275, 282, 335 P.2d 1071, 1075 (1959); *see* 4 Arthur L. Corbin, *Corbin on Contracts* § 973, at 905 (1951) [hereinafter Corbin] (requiring "a definite and unequivocal manifestation of intention" not to perform). Repudiation can be by act as well as by word. Restatement (Second) of Contracts § 250(b) (1981) [hereinafter Restatement] (defining repudiation by act as "a voluntary affirmative act" by a party that would make him "unable or apparently unable to perform" his commitments); Corbin, *supra*, § 973, at 913 (showing intent to repudiate may "be made and communicated by conduct"). Words or acts which are only "doubtful and indefinite statements" regarding performance, do not repudiate a contract. Corbin, *supra*, § 973, at 905.

7. Plaintiff does not claim a repudiation by word. There is no evidence the City ever indicated that it would not perform under the Lease. Instead, Plaintiff maintains that the act of entering into the Pecos Agreement repudiated the Lease because it created conflicting and inconsistent obligations on the City's part with respect to the same land. Under the applicable standard, Plaintiff must demonstrate that the Pecos Agreement itself was so at odds with the Lease that the mere act of contracting rose to the level of a "distinct, unequivocal, and absolute refusal [or inability] to perform." *Viramontes*, 65 N.M. at 282, 335 P.2d at 1075. We look first at the documents themselves for evidence of such a conflict.

8. The Lease is clear in its essential terms. Plaintiff had a lease for a fixed period: three years and no more. At the end of three years, Plaintiff had a right of first refusal: a "first right to continue leasing, subject to renegotiation." This gave Plaintiff a preferential position to renew the lease at the end of three years, but only if the City intended to continue leasing. *See Spencer v. J.P. White Bldg.*, 92 N.M. 211, 214, 585 P.2d 1092, 1095 (1978) (holding that first right of refusal for re-lease is not an option to re-lease). Plaintiff's right of first refusal was conditional; it was dependent upon a future decision by the City to continue leasing. Plaintiff did not have an option to extend the Lease at his discretion. *See id.; see also Gartley v. Ricketts*, 107 N.M. 451, 453, 760 P.2d 143, 145 (1988) (same). *See generally* Restatement, *supra*, § 261 (holding first right of refusal is only a conditional right to receive an option based on the occurrence of certain events); A.W. Gans, Annotation, *Granting to Lessee of "First" Privilege or Right to Re–Lease or to Renewal or Extension of Tenancy Period as Conditioned upon Lessor's Willingness to Re–Lease*, 6 A.L.R.2d 820 (1949); 8A George W. Thompson, *Commentaries on the Modern Law of Real Property* § 4441, at 246 (1963). The Lease is not ambiguous on this point.

9. The Pecos Agreement is equally clear. It provided the Pecos River Council with a three-year opportunity to raise money for a cultural center which, if built, would include a portion of the land then leased to Plaintiff. During those three years, the City promised "to hold and ... not dispose of nor alienate the ... land." If at the end of three years, the Pecos River Council satisfied its fundraising goal, then the City agreed to negotiate "a suitable conveyance" of the land. If not, there were no rights of renewal, and the Pecos Agreement would be null and void.

10. We make two observations from the face of these documents. First, during the three-year term of the Lease, the City's obligations under both contracts are consistent and not in conflict. Under the Pecos Agreement, the City was obliged to "hold" the land and not to "dispose of nor alienate" it. Nothing restricted the City from continuing to lease that land to Plaintiff; the Pecos Agreement did not interfere with the existing term of the Lease. Second, whatever expectations the Pecos River Council may have had with regard to the land at the end of the three-year "hold" period, they could only occur after Plaintiff's three-year Lease had run its course. The Pecos Agreement could not be in conflict with the Lease unless Plaintiff had a unilateral right to renew the Lease. As we have said, the Lease does not give Plaintiff that right. Therefore, on its face, the Pecos Agreement did not violate Plaintiff's rights under the Lease. Entry into the Pecos Agreement was not a "distinct, unequivocal, and absolute refusal to perform" the City's obligations under the Lease. *Viramontes*, 65 N.M. at 282, 335 P.2d at 1075. There was no repudiation as a matter of law.

11. Plaintiff contends that when these contracts are viewed through the lens of extrinsic evidence, they become ambiguous as a matter of law. With the benefit of such evidence, Plaintiff argues, reasonable minds can differ about Plaintiff's rights and the City's obligations under one or both contracts. We acknowledge that the trial court had the discretion to hear evidence in an attempt to prove an ambiguity. *Mark, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993); *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 508–09, 817 P.2d 238, 242–43 (1991). A party may show the circumstances surrounding the contract and attempt to clarify, but not contradict,

contractual language. *C.R. Anthony Co.*, 112 N.M. at 509, 817 P.2d at 243. The trial court correctly heard evidence on whether there was an ambiguity. Thereafter, the trial court agreed with Plaintiff that the agreements were ambiguous and allowed the jury to decide whether the City had breached the Lease anticipatorily by executing the Pecos Agreement.[1]

■ 12. We do not agree with either Plaintiff or the trial court that extrinsic evidence made either of these contracts ambiguous. We do not agree that the issue of repudiation or anticipatory breach should have gone to the jury. We apply a de novo standard in reviewing the trial court's decision on this point. *See Mark v, Inc.*, 114 N.M. at 782, 845 P.2d at 1236.

■ 13. During his case in chief, Plaintiff presented evidence of his own understanding of the Lease. He testified that, in his opinion, the Lease actually afforded him more than three years to operate the amusement park. Plaintiff noted that the park had been a losing proposition for years, and both parties were aware that it would take some time to turn around. Plaintiff presented expert testimony that a carnival of this type took more than three years to become a going concern. Plaintiff had been successful elsewhere in the carnival business. Plaintiff allegedly would not have left the security of that business to take over a speculative venture without obtaining enough time, longer than three years, to make a success of it. There was evidence that Plaintiff was making a substantial investment of time, money, and energy. There was also evidence that the City engaged the Carlsbad Development Council to conduct a long-term economic study of the park. Plaintiff even used the incremental increase in rent over the term of the Lease as evidence that success would not be an overnight phenomenon. In short, Plaintiff did his best to demonstrate his understanding that he would have enough time in the Lease to turn the amusement park

around and achieve success and that he would not be limited to an artificial term of years.

14. According to Plaintiff, his own expectations made the first right of refusal ambiguous. Plaintiff understood it to be more than just a conditional right, subject to the City's decision to continue leasing. He thought he had an option. Plaintiff characterized the Lease as "an option to continue leasing for an open-ended term." Plaintiff argues that the City repudiated his supposed "option" the instant the City committed itself possibly to selling some of that same land to the Pecos River Council.

■ 15. We disagree with Plaintiff's basic premise. As a matter of law, one party's subjective impressions, innermost thoughts, or private intentions, do not create an ambiguity. *Crawford Chevrolet, Inc. v. National Hole–in–One Ass'n*, 113 N.M. 519, 522 n. 3, 828 P.2d 952, 955 n. 3 (1992); *Perea v. Snyder*, 117 N.M. 774, 780, 877 P.2d 580, 586 (Ct.App.) ("[I]t is the intention which finds expression in the language used and not the party's secret or undisclosed intent that controls."), *cert. denied*, 118 N.M. 90, 879 P.2d 91 (1994). Plaintiff cannot establish an ambiguity merely by attempting "to raise a factual issue as to what was the intent in his own mind, which . . . is not the issue." *Perea*, 117 N.M. at 780, 877 P.2d at 586; *see also Hansen v. Ford Motor Co.*, 120 N.M. 203, 206, 900 P.2d 952, 955 (1995) (stating that statements of unilateral, subjective intent are insufficient to establish ambiguity in light of clear contract language). Just because Plaintiff thought he had an option does not make it so. Nor does it create an ambiguity for the jury to resolve.

16. Plaintiff offered no evidence that the City had misrepresented the term of the contract or led him to believe he had longer than three years. There is no evidence that the City ever agreed to Plaintiff's theory that he could renew the Lease unilaterally. There was no evidence the City even knew of

---

1. Plaintiff did not argue that he also had an implied contract or an oral contract, perhaps in light of NMSA 1978, Section 37–1–23 (Repl. Pamp.1990), under which any enforceable contract with a governmental entity must be in writing. We express no opinion as to whether the extrinsic evidence presented could create an implied contract if this were strictly a matter between private, non-governmental parties.

Plaintiff's intent until long after the Lease was ended.[2]

17. We also note the lack of evidence that the terms of the Lease were at all ambiguous when the parties actually contracted. The City's invitation for proposals stated that the term of the Lease could be "approximately two years." There was no mention of any right of renewal or an option. Plaintiff's own bid was for "three years," without any option or right of renewal. Plaintiff drafted the Lease and presumably had every opportunity to make his intentions clear in the document. *Cf. Manuel Lujan Ins., Inc. v. Jordan*, 100 N.M. 573, 576, 673 P.2d 1306, 1309 (1983) (holding to general rule that ambiguities in a contract are construed against the drafter); Restatement, *supra*, § 206 (same). Finally, both the City and the Pecos River Council agreed that the Pecos Agreement was subject to whatever rights Plaintiff had in his Lease. They did not intend the Pecos Agreement to repudiate the Lease. *See* Corbin, *supra*, § 984, at 951 n. 46 (no repudiation where second contract expressly subject to first contract).

18. Plaintiff may have thought he had additional rights under the Lease. He could have demanded reasonable assurances from the City. *Cf.* Restatement, *supra*, § 251 (reasonable doubt about intent to perform authorizes obligee to demand reasonable assurances from obligor of intent to perform). But he did not do so, electing instead to declare a repudiation. Before making that leap, Plaintiff needed more than subjective impressions and personal expectations. He needed an objectively reasonable basis to act. As a matter of law Plaintiff did not establish an ambiguity that would make the issue of repudiation a jury question. *See Jaramillo v. Providence Washington Ins. Co.*, 117 N.M. 337, 342, 871 P.2d 1343, 1348 (1994) ("[U]nilateral, subjective intent ... is not determinative. The parties must adduce evidence of the objective intentions of the parties ....").

19. Therefore, even assuming all Plaintiff's allegations are true, we conclude that

Plaintiff did not make a threshold showing that reasonable minds could differ in their understanding of the nature and term of Plaintiff's leasehold rights. Under well-established New Mexico law, Plaintiff did not have an option, and nothing he has presented could create a reasonable inference to the contrary. The Pecos Agreement could not repudiate contractual rights which Plaintiff simply never had.

*Remaining Issues/Attorney Fees/Counterclaim*

20. The jury instructions allowed Plaintiff to establish that the City breached the Lease by establishing at least one of the following contentions: (1) by depriving Hoggard of the use of all or part of the premises it had promised he could develop, (2) by depriving Hoggard of the concession rights it had promised him and (3) by failing to make the repairs and to keep the building in good repair as it had promised it would.

21. The jury returned a general verdict based on all of Plaintiff's claims. We do not know which of the three claims were successful. We could speculate based on the sheer size of the award that the jury decided for Plaintiff solely on the claim for anticipatory breach and not on the much smaller claims for loss of concession rights and reimbursement for repairs. However, given the uncertainty of a general verdict, the proper course is to remand for a new trial on those issues. *See Richardson v. Rutherford*, 109 N.M. 495, 503 n. 5, 787 P.2d 414, 422 n. 5 (1990) (holding that ambiguity of general verdict based on more than one claim requires remand); *Romero v. Mervyn's*, 109 N.M. 249, 255, 784 P.2d 992, 998 (1989) (requiring reversal if a party submits jury instructions providing alternative bases for relief and if there is no substantial evidence to support any one alternative). Of course, if Plaintiff's alleged loss of concession rights is based solely on his claim of repudiation and loss of

---

2. At oral argument counsel conceded Plaintiff never actually discussed with the City his thoughts about a term longer than three years and unilateral renewal rights. Counsel did allude to additional facts that would arguably amount to misrepresentation by the City, but they are not set forth in the briefs. SCRA 1986, 12–213(A)(3) (Repl.1992) (factual assertions must be supported in briefs by reference to the record).

use after he moved out, the court must direct a verdict in the City's favor.

22. The City argues it was entitled to a directed verdict on its counterclaim for unpaid rent, insurance premiums, attorney fees, and similar obligations. The Lease entitled the City to attorney fees arising from Plaintiff's "[f]ailure to perform any of the terms and conditions of this Lease." The City claims that Plaintiff committed a "failure to perform" when he fell behind in rent and utility payments which, in turn, gave rise to the City's counterclaim and demand for attorney fees. Plaintiff points out that the jury decided against the City on its counterclaim. Again, however, the ambiguity of the general verdict, which is interrelated with the counterclaim, may have affected the jury's consideration of the remaining issues, including the counterclaim. In fairness, given our reversal of Plaintiff's largest claim, the counterclaim should be remanded for retrial and with it the City's request for attorney fees.

*CONCLUSION*

23. The judgment is hereby reversed with instructions for the trial court to enter judgment for Defendant on Plaintiff's claim of anticipatory breach and repudiation. Plaintiff's remaining claims, as well as the City's counterclaim and request for attorney fees, are remanded for further consideration.

24. IT IS SO ORDERED.

WECHSLER and BUSTAMANTE, JJ., concur.